TITUS HUTCHINSON, plaintiff below, *vs.* EBENEZER PARKHURST, defendant below.---*IN ERROR.*

It is no sufficient reason for not setting aside an erroneous judgment, that the material facts were only testified to, by incompetent witnesses; for *non constat,* but they may be proved by *other* witnesses, or the incompetent witnesses be purged of their interest.

The cause of action against an officer, for not paying over monies collected on execution, does not accrue till *demand made;* and that is the period at which the statute of limitations commences to run against such action.

An action on the case for neglect of duty, in not paying over monies by him collected, does not lie against a *deputy sheriff,* but the remedy of the party injured is against the *sheriff* only.

The distinction between the liabilities of a *sheriff* and those of his *deputy* to the *party injured,* is, that while each are liable for a *misfeasance,* the former, and not the latter, is liable for a non-feasance of such deputy, in the duties of his office.

And if a deputy may maintain an action on a receipt for property by him attached, it is not in virtue of his office, but in virtue of the personal contract between him and the receipt-man.

THE action below was case against the defendant, for neglect of duty as a *deputy sheriff,* in not returning an execution in favour of the plaintiff, against one *Samuel Cleveland,* and for not paying over the money collected thereon. The receipt of the money, by the deputy, on the execution, was alleged to have been on the first day of February, 1815, and a demand by the plaintiff, and refusal of the defendant to pay over the money, were alleged to have been on the first day of November, 1823.

The defendant pleaded the general issue, with notice, that under said plea, he should give in evidence and rely upon the statute of limitations, in his defence.

On the trial of the issue, the plaintiff proved by the testimony of the said *Samuel Cleveland* and one *Samuel Cleveland, jr.* (although their testimony was objected to, on the ground of interest,) that the defendant had the plaintiff's execution for collection in the life of it; that he took the joint note of the witnesses, for the amount, payable at six months from date, and discharged the execution; that they were afterwards sued upon that note, by one *John Francis,* as endorsee thereof, whose writ was served by the said Parkhurst, as a specially authorized person, the said Clevelands then residing in *Tunbridge,* without the county of Windsor, and that execution being obtained in that suit, the said Parkhurst received the money thereon, in 1815. Copies of record of both said judgments were read in evidence, and it was also in proof, that neither execution had ever been returned; that the suit in the name of said Francis was brought at the instance of said Parkhurst, and that the plaintiff had demanded, and the defendant refused the payment of the money, as stated in the declaration.

The defendant contended before the county court, that the statute of limitations began to run upon the plaintiff's cause of action, as soon as the defendant received the money, and of course, that the plaintiff's action was barred by the statute. And the plaintiff contended, that his cause of action did not accrue against the defendant, nor the statute begin to run, until a

demand made for the money; and of course, that his action was not barred. But the said Court adjudged and decided, that the statute of limitations did begin to run against the plaintiff's demand as soon as the defendant received the said money, and that the plaintiff's action was barred by said statute. Whereupon the defendant had judgment for his costs.

*Windsor,*
*February,*
*1826.*
Hutchinson
*vs.*
Prakhurst.

A bill of exceptions being filed and allowed, this writ of error was brought, and the following errors assigned:

1. *The common error.*

2. That it appears by said record, that said county court adjudged and decided, that the statute of limitations began to run against the said demand of the said Hutchinson as soon as said Parkhurst had received the said money of said Cleveland, or said Clevelands; whereas, by the laws of this state, the said county court ought to have decided, that said statute did not begin to run against the said demand of said Hutchinson, until he demanded the said money of said Parkhurst.

*Hutchinson, pro se.* It appears by the record, that the county court gave judgment against the plaintiff, solely on the ground, that the claim was barred by the statute of limitations.

The plaintiff now contends, that the statute does not begin to run, and the sheriff is not bound to pay over collected money, till a demand made. If our statute, or practice, made it the duty of the sheriff to pay money to the clerk or magistrate on his return of an execution, his not doing so would be a breach of duty, for which he ought to be liable forthwith without a demand: as the creditor would know where to call for his money and obtain it, if it was paid over on return of execution. But we have no such law, nor any such practice, nor would such payment screen the sheriff.

But our statute, page 204, virtually forbids a sheriff to pay over money till it is demanded; at least, forbids his carrying it from home for that purpose, lest it should be demanded in his absence, and he would be liable for fifteen per cent. interest. That statute points out the direct duty, to pay over the money when demanded, on penalty of such interest, and no court, surely, would impose upon the sheriff a duty inconsistent with that.

We are not without authority upon this point. In *Wakefield* vs. *Lithgow*----3 *Mass. R.* 251, the Court, commenting on a statute similar to ours, except the interest is 30 per cent. instead of 15, say, "by our statute the sheriff is not obliged to bring the money into court, but may retain it until it be demanded of him by the creditor." After a demand and refusal, (the Court proceeds) the creditor may recover it of him.

Also, in the same vol. page 295, in the case *Wilder* vs. *Bailey. and trustee*, the court, in adverting to the duty of sheriff under their statute, say, "he must return his writ with his doings thereon, but he is not obliged to bring the money into court. The money remains in his hands, in the custody of the law, until the judgment creditor demand it of him."

*Windsor,*
February,
1826.

Hutchinson
*vs.*
Parkhurst.

The law is otherwise in the state of New-York. The sheriff *must* return money with his writ, or be liable to attachment.

So in England, see *Sheridan's practice,* 73. Where such is the law, we see no reason why the creditor might not pursue by attachment, or by action, without demand, on failure of the officer to return money with the execution. But not so in Vermont, or Massachusetts. If, then, the action would not have lain against the defendant, without a demand of the money; neither would the statute begin to run, till such demand. Therefore, in this, the county court erred in judgment.

But, as the Court will be called upon to render judgment upon the whole record, we must meet the other objections urged against the plaintiff in the county court.

It was objected, that the Clevelands were interested in this suit. The interest contended for, was, that a *recovery in this* suit would virtually destroy the judgment as to them. This objection must suppose a judgment against them in full force ; one, that they have an interest to procure a discharge from. On this point, their testimony purges them of all interest, because it shows both executions discharged. This objection also forgets, that both judgments were outlawed before the witnesses testified ; this appears of record, in the action.

This objection rests on decisions out of this state, never adopted as law here, but contradicted by all our practice, viz. That the officer is without remedy, when he neglects to collect an execution. Our common law, in this state, has always been, that the execution is good against the debtor, till he has paid it. But if this ground were otherwise tenable, the objector must show the execution undischarged, in order for his supposed benefit to accrue to the witnesses. Even then, the contingency of a suit, upon an outlawed judgment, is very remote. The record shows the contrary of all this to be true. The executions are discharged, and defendant has the money, and is disposed to keep it. The witnesses are without interest, and were rightly admitted.

Again, it was objected, that the action would not lie against the deputy sheriff, but must be brought against the sheriff. And it is urged, that the statute expressly makes the sheriff liable for the defaults of his deputy. We answer, it requires a statute to make one person liable for another against his will ; but it needs no statute to make a man liable for his own faults and neglects.

But it is further said, the same statute declares, that acts of the deputy shall be considered as the acts of the sheriff appointing him. This is only true, *sub modo.*

This statute means no more than that the creditor or person having claim against the deputy, for neglect, &c. he may treat the acts of the deputy as acts of the sheriff; he may allege that the sheriff himself did the acts, &c. And when the sheriff sues his deputy, he must declare against him according to the facts. And when a creditor is willing to pursue the deputy, and let the sheriff alone, he may do so ; and in that case, he also must declare according to fact, calling the acts the acts of such deputy.

Windsor, February, 1826.

Hutchinson vs. Parkhurst.

It was formerly the usual practice, in this state, to bring actions for and against deputy sheriffs; and it is believed no objection to such action, when raised, has ever prevailed. I say, when raised, for the case that will be read from *D. Chipman's R.* was the work of the judge, *Nathaniel Chipman*, in his charge to the jury; a charge unsolicited by counsel, upon a point not made in the cause, and unnecessary for its decision, for another defence was considered fatal. This was in the year 1797. A contrary decision was made by the Supreme Court at Rutland, in 1803, in *Miller* vs. *Gould*, see 2d *Tyler*, 439.

But it has been urged, and again will be, that in England, the suit must be against the sheriff, and not against his deputy. Authorities will be produced, to show that there and in New-York, the courts so decide. The authorities in England are, that an action will not lie against a deputy for neglect of duty. These are sufficiently answered, by saying that in England, the deputy has not the return of writs, is not an independent officer, is a mere servant of the sheriff. In this state, the deputy is an independent officer, signs as deputy sheriff, and can do all duties which the sheriff might do.

But, though actions do not lie in England as against the deputy for neglect of duty, they do for voluntary escape. See 4th item of Lord Holt's opinion, in 1 *Salk*. 18. This case is referred to in 1 *Chitty*, 73, and reported in *Lord Raymond* and *Modern Rep.* Now what is a voluntary escape but a wilful neglect of duty? and what is a neglect to pay over collected money, but a wilful neglect of duty? They stand on the same footing. Hence, in 2 *Show. R.* 289, it is expressly decided, that an action does lie against an under-sheriff, for money collected on a *fi. fa.*

As the statute of Massachusetts upon this subject is very similar to ours, so their practice corresponds with what is above stated of our practice.

In Massachusetts, the courts decide, that a creditor may sue either sheriff or his deputy, but cannot sue both. See 1 *Pickering's R.* 62, *Campbell* vs. *Phelps*; also, 12 *Mass. R.* 449, *Draper* vs. *Arnold.* The last case was brought against a deputy, and that defence set up.

See also 7 *Mass. R.* 464, *Esty* et al vs. *Chandler* sheriff, where it was doubted whether the sheriff was liable for the 30 per cent. forfeited by the deputy, but decided in the affirmative.

From *Swift's system, vol.* 1, p. 542, we learn, that in Connecticut, deputy sheriffs are independent officers, are under oath, and have all the power of sheriffs. And he adds, "as the duties and liabilities of sheriffs, deputy sheriffs, and constables are the same, I shall consider them together;" and in several pages upon the subject, he makes no mention of any distinction about their liabilities, each for his own neglect.

From all which it is inferred, that at least in all those states in which deputy sheriffs are independent officers, and make their own return upon writs, and sign their own name as deputy

Windsor,
February,
1826.

Hutchinson
vs.
Parkhurst.

sheriff, such deputies are, and ought to be, liable to be sued for their own neglect. And even where they are not thus independent, they are liable to be sued for wilful neglect, such as voluntary escapes, and refusing to pay over monies when collected.

*Collamer*, for the defendant in error. The sole question here is, does the action against the officer, for not paying over money collected on execution, to a creditor residing in the same county, accrue, after reasonable time to pay over the money, without demand?

That the officer is bound to pay over, without demand, is apparent: 1. from the consideration that he is bound to serve all processes agreeable to their precept, and an execution directs him to pay over as well as to collect.—*Stat.* 316, 203-4.

2. By the *Stat. p.* 214, it is provided, that a creditor residing without the county must have an agent within, and that no action shall be commenced by such creditor for not paying over the money *without demand.* This clearly implies, that in other cases, such action could be maintained *without* demand.

3. This is fully decided in the 18 *Johns. R.* 133.

4. All the reasons that the statute should apply to any case, apply to this, and the creditor ought not, by demand, to revive an affair of fifty years standing, and thus throw all the hazard in the preservation of proof, the recollection and mortality of witnesses, upon a defendant. This is the very evil the statute was intended to prevent.

As it is however supposed the Court will never find that judgment erroneous, which it is apparent from the record can never be the other way, we come to consider another part of the cause.

Was the testimony offered by the plaintiff rightly admitted, and could the same legally maintain the declaration? The *Clevelands* were interested, and should not have been admitted. There was a judgment against them, and if by their testimony, the officer could be made to pay the creditor, he would not move the judgment against them, and the officer cannot do it.— 7 *Johns. R.* 426—15 *Johns. R.* 256—2 *Johns. cases,* 3.

There is another reason why judgment must ever be for the defendant　　He is sued as a *deputy sheriff,* and an action can never, in this state, be sustained against a deputy sheriff, but must be against the sheriff.—See the *Statute,* 200-1, 203-4, from which it is apparent, that their acts, &c. "*shall be taken and deemed*" the act of the sheriff, and he alone responsible, in all civil cases.— See also, *D. Chip. R.* 64----*Cowper,* 403----7 *Johns. R.* 470.

The opinion of the Court was delivered by

Skinner, Ch. J.　The reason urged by the counsel for the defendant, against setting aside the judgment of the county court, viz. that the testimony of the Clevelands, on the part of the plaintiff, which was admitted by the court, ought to have been rejected, can have no weight in deciding this case, if error in any part of the proceeding is the cause of the judgments having

been rendered against the plaintiff. The objection seems to rest upon the principle, that as no recovery can be had without proof of the material facts testified to, by these witnesses, and as they are interested, and cannot testify, it would be unavailing to reverse the judgment, and send the cause again to trial.

*Windsor,*
February,
1826.

Hutchinson
*vs.*
Parkhurst.

There is no presumption that these facts may not be supplied by other testimony, or that the interest, if any, in these witnesses, will not be discharged. Such might, and probably would have been the proceeding at the former trial, if they had been rejected.

It is further insisted by the counsel for the defendant, that the statute of limitations constitutes a bar to a recovery. The cause of action (if any exists) did not accrue against the officer till demand; and as the record shows the demand to have been made within six years, and not before, the plea of the statute of limitations cannot avail the defendant.

Whether an action will lie against a deputy sheriff, for neglect of duty, or whether the action in such case must be against the sheriff, is the important question to be decided in this case.

In England, no action for *neglect* of duty will lie against a deputy sheriff, though such officer is liable for a tort committed by him. The distinction is, that for *misfeasance*, the deputy is liable as well as the sheriff; but for nonfeasance, the action must be against the sheriff. In the opinion of Lord Holt, in *Sal.* 18, this distinction is clearly marked; he says, the deputy is not chargeable as an officer, but as wrong doer; that for a *voluntary* escape, an action lies against the deputy, for it is in the nature of a *rescue*; but for negligent escape, the action lies only against the sheriff.

From examining the statute, it is apparent the legislature did not intend to place deputy sheriffs upon the same footing as to their liability to the person injured by their neglect, as sheriffs and constables; but that the sheriff only, as in England, should be held liable, and there is no necessity, nor can any good reason be assigned for departing from the English law. The statute provides, that all acts, doings, and returns, of the deputy, shall be taken and deemed, as the act of the sheriff, and that the sheriff shall in all things be amenable, and responsible, for the conduct of his deputies, and may take bonds to indemnify him against their acts or defaults. It further provides, that no sheriff shall be amenable criminally, for the conduct of his deputy, other than for fines and amercements for neglect of duty.

It is further enacted, that deputy sheriffs, as well as sheriffs and constables, for neglect to serve and return, or for making false return, of any process, shall pay a fine not exceeding $100, and that the constable and sheriff (omitting the deputy) shall pay to the party aggrieved, all damages, &c.

It is further provided, that sheriffs and constables (omitting deputy sheriffs) shall pay to the creditor 15 per cent. on monies collected, and not paid over on demand. In all cases of penalties imposed for the misconduct of the several officers, the dep-

Windsor,
February,
1826.

Hutchinson
vs
Parkhurst.

uty sheriff is named; and he is omitted in all cases where reme-dy is given to the party.

It is said, that deputy sheriffs have maintained actions upon receipts for property attached by them. This may be correct; the only mode of divesting the officer of property attached, known to the statute, is by replevin. The practice of *receipting* has been adopted for convenience, and is a very proper course of proceeding; indeed, it cannot be supposed the officer person-ally is to take charge of, and keep all such property as he may attach; he may employ agents or receiptors for this purpose; the act is not official, and any contract he may make with the person to whom he entrusts the goods, is as binding as any other private contract between parties. The law in relation to the liability of deputy sheriffs is correctly stated by the late chief justice Chipman, in the case of *Smith* vs. *Joiner & Moer*, 1 *D. Chip. R.* 64.

The conclusion therefore is, that, the legislature having made no provision for the party in such case, to seek redress against the deputy, and the remedy at the common law being against the sheriff only,

The judgment in this case must be affirmed.

Hutchinson J. being party, did not sit in the cause.

Plaintiff in error, *pro se.*

*Jacob Collamer*, for the defendant in error.