Gleason *v* Briggs.

---

ROLLA GLEASON *v.* WILLIAM P. BRIGGS.

*Statute of frauds.   Official neglect.   Interest.   Book Account.*

One L. was indebted to the plaintiff, but had executions in the hands of the plaintiff, as deputy sheriff, for which he had become holden to an amount exceeding L.'s indebtedness. The defendant bought the executions of L., and in part payment therefor, promised to pay the amount L. was owing to the plaintiff, in a settlement of accounts between the plaintiff and himself, and assented to its being charged to him. *Held* that the plaintiff's claim therefor against the defendant was valid, and that the promise of the defendant was not within the statute of frauds.

One T. sent to the plaintiff, as deputy sheriff, an execution in his favor against the defendant, which, at the defendant's request, and upon his promise to pay and indemnify him for so doing, the plaintiff levied upon the defendant's real estate.

Gleason *v.* Briggs.

T. sued the plaintiff for not otherwise collecting the execution, and recovered a judgment against him for the amount of the debt, which judgment the defendant paid. T. refused to pay the plaintiff's fees for levying the execution, and the plaintiff then charged them to the defendant. *Held* that it was not a contract for the violation by the plaintiff of his official duty, and that the defendant was liable upon his promise for the fees charged.

Interest upon a debt, payable on demand, will be allowed, after a demand, by way of damage for the delay; and the law will imply a contract to pay it.

An attempt to settle may perhaps be fairly enough regarded as a demand of payment by both parties for whatever should be found due on the other side.

The expense of keeping animals attached, may be deducted from the amount received upon their sale, and a subsequent satisfaction of the attachment liens, by a payment of them by the debtor, will not deprive the officer of his right of retaining the expense of keeping.

Executions and notes may, by agreement, be charged and recovered for in the action on book account.

But a claim for a horse attached and *not sold*, or returned after a discharge of the attachment, or any claim against a person on account of his official neglect, as a deputy sheriff, cannot, without his consent, be adjusted in the book action.

BOOK ACCOUNT. The disputed items in the plaintiff's account, which were passed upon in the supreme court, were as follows.

| | |
|---|---|
| Newell Lyons account, | $33.60 |
| Bal. on execution, S. Churchil *v.* you, | 4.07 |
| Fees on same, | 2.38 |
| Bal. on execution, Shepherd *v.* you, | 1.27 |
| Fees on execution, Blodgett *v.* you and Jones, | 2.66 |
| Setting off land at your request, in the case of | |
| .Thrall *v.* Briggs et als., | 11.12 |
| Interest, | |

The auditors reported that Newell Lyons was a lawyer who, in 1834, was indebted to the plaintiff and had in the hands of the plaintiff, as deputy sheriff, certain executions upon which the plaintiff had become holden, to the amount of $40.91. Lyons sold these executions to the defendant, who, in part payment therefor, was to pay the plaintiff what Lyons was then owing him for official services, and assented to its being charged to him, and agreed to pay it in settlement of accounts between the plaintiff and himself. The auditors found that said indebtedness amounted to $22.81, and allowed the first of the above charges, in part, at that sum.

The auditors found and reported that the items for balances and fees on the executions above mentioned were charged to the defendant, at his request, or by his agreement, and that he never paid them in any other way, and that the charging them to the defendant was treated by the plaintiff, at the time, as a payment of those amounts on the executions.

In reference to the charge of $11.12, the auditors reported that a Mr. Thrall sent to the plaintiff, as deputy sheriff, an execution in his favor against the defendant and others, which, at the defendant's request, the plaintiff levied upon his real estate, the defendant promising the plaintiff that, if he would so levy it, he would pay him for doing it, and indemnify him generally. The sheriff was sued by Thrall, and made liable for the debt, on account of the plaintiff's not otherwise collecting it; and this judgment against the sheriff the defendant paid. Thrall refused to pay the plaintiff's fees for levying the execution, which were originally charged to him, and upon his refusal, the plaintiff charged them to the defendant. The auditors allowed the charge.

In the spring of 1836, the parties attempted to settle, and the respective accounts of each were brought forward, to which objections were made, and no settlement was effected. The auditors reported that if the parties had then settled, on the same basis which the auditors adopted, there would have been about $130 due to the plaintiff, and that the subsequent dealings between them, down to September, 1851, would not have materially altered that balance, and that they, therefore, allowed eighteen years interest on that balance, amounting to $138.40.

The principal items in dispute, in the defendant's account, grew out of an attachment and subsequent sale by the plaintiff, as a deputy sheriff, of several horses and cows belonging to the defendant. On the 22d of September, 1851, the plaintiff took, as the property of the defendant, upon writs of attachment and executions against him, four horses, one colt, thirty-one cows, nineteen two year olds, &c., and afterwards advertised said property to be sold on the 3d day of November, 1851, on the executions in his hands, and some of the attaching creditors, who had not obtained judgments, consented to the sale. On the 3d of November, the defendant gave to the plaintiff a writing, in these words.

" I hereby agree that the cattle and horses, attached on writs " and executions against me by Rolla Gleason, as deputy sheriff, " may be sold at public auction on the 13th day of November, " 1851, provided the same are not sold by me, before that time, for " such notes as will be satisfactory, and which I am to have the " right to do. Richmond, Nov. 3d, 1851."

(Signed) " WM. P. BRIGGS."

The plaintiff adjourned the sale to the 13th of November; the defendant sold to one Foster, nine of the cows for $171, for which the plaintiff, at the request of the defendant, took E. B. Green's note, running to himself, and payable at a short day, with interest. On the 13th of November the defendant sold the remainder of the property attached, with the exception of one horse, which does not appear to have been in any way accounted for, which sales amounted, including the Green note for $171.00, to the sum of $1,184.20. The plaintiff was at an expense of $138.54 in keeping the property from the 22d of September to the 13th of November, and including this sum, he paid and satisfied executions against the defendant, which were liens upon the property, with his fees and charges, to the amount of $833.20, leaving a balance in the plaintiff's hands of $351.00, including the Green note. There were other liens by attachment upon this property, at the time of the sale, but they were subsequently relieved or satisfied without a resort to it, and, after the removal of all the liens, the defendant had demanded the above balance of the plaintiff. One of the horses taken by the plaintiff, on the 22d of September, and sold on the 13th of November, 1851, had previously been attached by the plaintiff, on a writ in favor of Dutton & Bingham against the defendant, and receipted to the plaintiff by Ransom Jones. On the 13th of November, the plaintiff procured some one to bid this horse off in the name of Jones, which was done at $87.50. This was done without Jones' knowledge, and he disaffirmed the bid; and the horse went back into the defendant's possession, and remained there until the spring of 1852, when the Dutton & Bingham execution came into the plaintiff's hands, seasonably to charge the property, which the plaintiff again took, and advertised and sold towards the payment of that execution.

At the time of the hearing before the auditors, the plaintiff had

not completed his returns on the executions which were paid by the avails of said sale, being in doubt how legally to distribute the expense of keeping the property, but he had a full account of the sales, and of said expense, so that he might complete his returns in any way deemed proper, and the auditors, therefore, treated the sale as legal, and the expenses as constituting one item, and did not distribute it to the several cases.

The auditors found a balance of $301.64 in the plaintiff's favor, without allowing anything to the defendant on account of the horse attached, and not sold, or for the horse bid off in Jones' name, or for the balance of the sales remaining in the plaintiff's hands, after satisfying the liens upon it.

The county court, November Term, 1855,—PIERPOINT, J., presiding,—accepted the report of the auditors, and rendered judg ment upon it for the amount reported in favor of the plaintiff.

Exceptions by the defendant.

*W. P. Briggs* and *C. Linsley,* for the defendant.

———— ———— for the plaintiff.

The opinion of the court was delivered by

REDFIELD, CH. J.    The claim for what Lyons owed the plaintiff, seems to be a valid claim, upon two grounds.   It seems to have been a part of the contract of purchase, of the balance of the executions due to Lyons, that what Lyons owed the plaintiff should be deducted; and we do not see why the plaintiff had not a right to retain that, and only account to the defendant for the balance.   And without this, if the defendant consented to have it charged to him, and the plaintiff consented to do this, it would become an original undertaking on the part of the defendant, and Lyons would be released; and this takes it out of the statute of frauds.

The charging of executions or notes, upon account, by agreement of parties, has been repeatedly sanctioned by this court.

In regard to the item for fees, for levying Thralls' execution, upon the finding of the auditors, that the defendant expressly promised to pay the fees, if the plaintiff would make the levy, there can be no question, unless this was the price paid to hire the plaintiff to

violate a known official duty. If this contract were for mere ease and favor on the part of the defendant, it has often been decided that even a bond is not valid when given upon such consideration. But the court are not satisfied that it was, at the time the contract was entered into, understood by both parties to be a departure from the plaintiff's official duty. It might have been regarded as doubtful whether, under the circumstances, the creditor would not acquiesce in the levy. If he did, it was all very well, and perfectly valid. If he did not, and should recover of the officer, that would leave the land the officer's, by being subrogated to the rights of the creditor, and the defendant's contract virtually was, to pay the amount of the levy and take the land. He has paid all but the fees, and as nothing is said in the report upon that point, we must presume no objection is made upon the ground that the land has not been conveyed to the defendant. If he really, then, now holds the land levied upon, which, but for this contract would have been the plaintiff's, we see not why these fees are not properly chargeable to him.

The interest seems to have been cast upon what the auditors found to be due to the plaintiff in 1836, at the time they met and attempted to settle, and which was fairly enough, perhaps, regarded as a demand or claim of payment upon both sides, for what should happen to be due. And if it had turned out that the plaintiff owed the defendant, at that time, a balance, it would seem just to give him interest, and that is what the auditors did for the plaintiff. The law will always imply a contract to pay interest upon a debt payable on demand, after demand made, by way of damages for the delay. The cases upon this subject may not all be reconcilable, but this is almost the universal rule.

The horse which the plaintiff attached and did not sell or show at the audit, had been returned, could not surely be charged upon book, without showing some consent to such a charge on the part of the plaintiff.

The horse bid off by the plaintiff in the name of Jones, and which went into the defendant's possession, and was finally sold upon his debt, seems sufficiently to explain itself. The sale, unless ratified by Jones, was a mere nullity, and seems to have been so regarded by the parties.

We do not see why the expense of keeping the stock is not to be deducted from the amount of the sales. For, whether applied by way of return upon the executions, or not, the debts are discharged, so far as executions came into the plaintiff's hands, and for which he has retained money. And as to those liens, which existed at the time of the sale, and have since been paid by the defendant, so that executions never came into the plaintiff's hands, this will not deprive him of retaining pay for keeping.

The only remaining item is one of large amount, and, as it changes the result, is certainly of great importance. It is the balance of money, in the plaintiff's hands, from the sale of cattle attached, after all liens were discharged.

It is claimed that the plaintiff does not hold either the money or Green's note, in his official capacity. As the sale to Green was by the defendant himself, and upon credit, and without the concurrence of the sheriff, according to the decisions in this state, he (the sheriff) would not be liable for the money until collected, if ever, although by the arrangement between these parties, the plaintiff, doubtless, had a right to hold the note for his indemnity, and had he actually received the money, we should probably find no difficulty in making him accountable in this action. But as he did not receive the money, and it is still collectable, and he has never consented to have the note charged to him, we do not see how he is to be made liable, in this action. If liable in any form, it is for not collecting the money, and that cannot be charged on book,

As to the money in the plaintiff's hands, it seems to us to have been an official sale, notwithstanding the debtor waived the full term of advertising. *Burroughs* v. *Wright*, 19 Vt. 510. We understand that the liens did exist until after the sale, else why did the defendant surrender Green's note as well as the money? They have been since removed. It would clearly seem to be an official neglect, for the deputy, under the circumstances, to refuse to pay back the money. The sheriff is clearly liable for it. The deputy is clearly not liable, as for an official neglect. *Hutchinson* v. *Parkhurst*, 1 Aik. 258. According to the case of *Tuttle* v. *Lowe*, 7 Johns, 470, the deputy is liable for the money in his hands, upon an express promise to pay, and not otherwise. None such is proved here. I can find no case where general assumpsit has been main-

tained against the deputy for not paying over money in his hands, for which the sheriff was liable. It has been held, I think, that he is liable in trover, for not surrendering property attached after the lien is dissolved, but this is a tort, and he is always liable for misfeasance, but not for nonfeasance. And it seems to us an action on book will not lie, until the parties agree it may be charged, or the deputy promises to pay it, which is equivalent. So long as the sheriff remains liable, it would seem that, for mere official neglect, the deputy is not also liable. And although the sheriff be clearly liable, it was never claimed that he was liable to this kind of action. We certainly could not hold that this action will lie for official neglect. An action for money had and received sometimes lies when the money is obtained by force or fraud, but book account will not lie. And if it could be shown that assumpsit, as for the money, will lie both against the sheriff and the deputy, book account will not lie. *Hopkinson* v. *Sears*, 14 Vt. 494, was an action for money against a sheriff; but the money was obtained wrongfully in that case.

　　Judgment affirmed.