WILLIAM G. SHAW, ADMINISTRATOR OF JOHN GORDON'S ESTATE, *v.* JAMES HALLIHAN AND WIFE.

*Liability for wrongful Disposition of Effects of Deceased Persons. Husband and Wife.    Torts of Wife.*

Whoever wrongfully disposes of the effects of a deceased person, whether before or after letters testamentary or of administration are granted, is liable to an action therefor by the executor or administrator when appointed. And husband and wife are jointly liable in tort, for the wrongful disposition of such effects by the wife.

CASE, with counts in trover.    The plaintiff introduced evidence tending to show, that the intestate went to the defendants' house to board some time in May, 1868, and carried with him a bedstead, bed and bedding, and some other articles of small value ; that he was taken sick early in July, and finally died there on the 15th of August following ; that during his sickness, the defendant Mrs. Hallihan took care of him, and had the principal charge of his business, had the custody of and access to his pocket-book, frequently took money therefrom, at the request of the intestate, to pay to those he was owing, &c. ; that before he died, she drew from the bank $400 of his money, at his request, some of which was paid out by him, or at his request, before he died ; that at the time of his death, said

articles of property were in the defendants' house, and were still there at the time of trial; that on the night of the testator's death, Mrs. Hallihan took all of his money into her possession; that she paid out some of it for the intestate's funeral expenses, and kept the rest in her possession; that after the plaintiff's appointment as administrator, and before the commencement of this suit, the plaintiff called at the defendant's house, informed them of his appointment, and demanded whatever property the intestate left. Upon this point the plaintiff testified as follows:

"I went to the door and met this Mrs. Hallihan in the front hall, and her husband came into the front hall with her. I asked her if Mr. Jordan died there, and she said he did. I asked, I think, how long he was sick, and she said four or five weeks. Then I told her I had been appointed as administrator to look up his affairs, and that I came up to demand whatever property he had there that was left. I said that if there were any claims, they would all be adjusted against his estate in the proper way, but it was my duty to collect together the property. She said in the first place that there wasn't anything of his there. I asked her if there wasn't any money. She said she didn't know anything about any money, and she was very cross, and repelled all my inquiries. She stood in the door-way, so that I didn't go in any further then just at the front door. She denied knowing anything about any money, and then said I, 'Didn't he have some household effects?' She said, 'I don't want to talk with you any more; I don't know anything about his property.' Said I, 'Didn't he have a bed and some bedding?' 'Yes,' said she, 'he had a bed.' I asked her if he had any more things, and she said she wouldn't answer any more questions, and turned away from me. Her husband volunteered to say something in connection with the matter while we were talking; but she told him to shut up his head, it wasn't any of his business; and he subsided."

The plaintiff also introduced evidence tending to show that the plaintiff's attorney made demand of both the defendants for the property and money, before the commencement of this suit, and that Mrs. Hallihan refused to deliver the same; that on this occasion Mrs. Hallihan was loud and boisterous, and when her husband attempted to speak in the matter, told him to shut his head, and called him an old fool. This suit was brought to recover for the property and money aforesaid. When the plaintiff rested,

the defendants' council claimed that upon the proof, the plaintiff was not entitled to recover, and the court, at the April term, 1873, PIERPOINT, Ch. J., presiding, so held, *pro forma*, and directed a verdict for the defendants; to which the plaintiff excepted.

*Wm. G. Shaw* and *H. H. Talcott*, for the plaintiff.

The court erred in holding that the plaintiff was not entitled to recover against both or either of the defendants; and the case should have been submitted to the jury. The rule of law is, that where the wrong or injury complained of was committed by the wife in the absence of the husband, the wife is really the offending party, while the husband is liable by reason of coverture, and in such case the husband and wife should be joined; while, if the act complained of was committed by the wife in the presence of the husband, *prima facie*, the husband alone is liable, for the law will presume coercion on the part of the husband; but this presumption may be rebutted by facts showing that the wife was the more active party, or that the husband being present was incapable of coercion, or that the wife was the stronger of the two. When these other facts, tending to show the participation of the wife in the tort, and which tend to rebut such presumption of coercion, exist, it is a question for the jury to determine whether or not such presumption of coercion is overcome. *Carlton* v. *Haywood,* 49 N. H. 314; *Marshall* v. *Oakes*, 51 Me. 311; Sch. Dom. Rel. 103; 1 Russell Crimes, 22, n. g; 1 Chit. Pl. 93; *Folsom* v. *Manchester & wife*, 11 Cush. 334.

There was some evidence in this case tending to show that Mrs. Hallihan was the more active party in the appropriation of the property of the plaintiff's intestate; that she paid out Jordan's money after his death; that she had control of his property when he was living, and took charge of it after his death; that she had full and exclusive control of his estate, and all business relating to it, as far as these defendants were concerned; and that she regarded any interference on the part of her husband as impertinent and unbecoming in him, and that she considered it none of her husband's business. It should have been left to the jury to

say whether or not Mrs. Hallihan was coerced in this matter ; and if the jury had found the active participation of the wife in the alleged wrongful and fraudulent conversion of the plaintiff's goods and money to the use of both the defendants, or to her own use, then the defendants would have been jointly liable.

Later cases have fully settled and declared this principle, that for the joint fraud, tort, or criminal act of the husband and wife, when the circumstances are such as to rebut the presumption of the coercion of the husband, both may be jointly held liable civilly or criminally. *Carlton* v. *Haywood, supra.*

*Henry Ballard* and *E. R. Hard*, for the defendants.

There being no pretence, either in the declaration or in the testimony, of any wrongful act on the part of the defendants, or either of them, in obtaining possession of the property, nor of any abuse of it by either of them, the question is, did anything occur on the occasions of the alleged demands by the plaintiff, or by his attorney, which entitles the plaintiff to recover against either of the defendants ? There was no testimony tending to show any tortious act on the part of Mr. Hallihan. Although there was no evidence of any personal interference on his part with any of Jordan's effects ; still, in legal effect, they were, while at his house, in his possession, and not in the possession of his wife ; and this possession being lawful, he can be made chargeable, only by proof of some unlawful use or treatment of the property, or of a refusal, upon a proper demand on *him*, to give it up ; and there was no evidence whatever of either.

Nor did the testimony tend to prove any act on the part of Mrs. Hallihan which subjects her to liability in this action. As before said, the property, in legal contemplation, was not in *her* possession, but it was in the possession of her husband ; her refusal, therefore, to surrender it, constitutes no cause of action. 2 Hilliard Torts, 511. But allowing that her refusal to surrender the property was tortious, the tort having been committed *in the presence of her husband*, no recovery can be had against her. Sch. Dom. Rel. 102–3 ; Reeve Dom. Rel. 226 ; 2 Kent Com. (8th ed.) 133. To entitle to a recovery upon evidence of a demand and

refusal simply, it must appear that the property demanded was in the possession and subject to the control of the party upon whom the demand was made. *Rice* v. *Clark*, 8 Vt. 109; *Knapp & Worden* v. *Winchester*, 11 Vt. 351; *Yale* v. *Sanders et al.* 16 Vt. 243.

In *Isaac* v. *Clark*, cited in 2 Saund. Pl. & Ev. 194, it was held that, "if goods are delivered to husband and wife, no action of *detinue* lies against them both for these, but against the husband alone;" because, per DODDRIDGE, J., "the wife cannot detain."

The opinion of the court was delivered by

WHEELER, J. The husband is liable with the wife for her torts, but she is not liable for his torts, unless they are her torts also. This action being against both husband and wife, for tort, can only be maintained for some tort of the wife. The conversion of property to use merely by the wife, is to the use of the husband, and not of herself. Salk. 114; 2 Wms. Saund. 47 i. The mere detention of property wrongfully by her, is not her tort, but her husband's. 2 Greenl. Ev. § 647. This appears from the fact that the action of *detinue*, the gist of which was wrongful detention, could be maintained against the husband only. 1 Chit. Pl. 82; Bac. Ab. Lit. Detinue, A. Where the conversion is by destruction of the property by her, she may be held with her husband. *Keyworth* v. *Hill*, 3 B. & Ald. 685; 2 Roper Hus. & Wife, 77. Or by consumption by her; as, "suppose she were to take my sheep and eat them." Buller N. P. 46. According to these principles, the wife cannot be held liable for the articles of specific property nor for the money merely detained and kept from the plaintiff by the defendants. But the appropriation or payment of money, as it had no ear-marks, and circulates as currency, would be equivalent to destruction or consumption of it in respect to the person entitled to it. Such disposition of it could be made by the wife independently of the husband, and, if unlawful, would constitute a tort of hers, for which both would be holden. The evidence in this case tended to show an appropriation and payment by the wife of money left by the intestate at his decease, and that she paid part of it for the funeral expenses. Probably, it was unavoidably necessary for the husband to provide for the

51

burial of the body of the intestate, being at his house, as there was no administrator to do it in proper season, and there appears to have been no relative who would do it. The expenses of the burial would constitute a claim, preferred above all others, against the estate. Gen. Sts. ch. 53, § 34. But the defraying of them out of the effects would, at common law, make the person so meddling an executor *de son tort*. Bac. Ab. Lit. Exrs. & Admrs. B. 3. And it would be wrongful and remain so, unless the person should become executor or administrator rightfully. 2 Redf. Wills, ch. 1, § 2, and note 6. The liability of an executor *de son tort*, was enforced by suit against him as if he was rightful executor. The system of settling estates by proceedings in the probate courts, in this state, has so superseded common-law remedies as to prevent maintaining actions against executors or administrators, otherwise than to enforce the proceedings in the probate court. *Boyden* v. *Ward, admr.* 38 Vt. 628. Perhaps a common-law action could not be maintained any more against a wrongful, than against a rightful, executor; and so there may not be any remedy against a person who wrongfully intermeddles with the effects of a deceased person, other than by action in favor of the proper executor or administrator when appointed. 2 Redf. Wills, ch. 1, § 2, note 6. But that question is not material, nor passed upon now. It seems to be settled that any one wrongfully disposing of such effects, before or after letters testamentary or of administration, is liable to an action therefor by the executor or administrator when appointed. Plow. 275; Toller, Exrs 48; *Manwell, admr.* v. *Briggs,* 17 Vt. 176. Hence, the defendants may be held liable, as well for the money paid by the wife for funeral expenses of the intestate, as for that appropriated by her otherwise. The *pro forma* judgment of the county court is reversed, and the cause remanded.