## HINCKLEY *v.* RAILROAD COMPANY.

A receiver appointed by a State court in a suit which, under the act of March 3, 1875 (18 Stat. part 3, 470), was subsequently removed to the Circuit Court of the United States, reported to the latter, stating the amount of the fund in his hands, and asking for an order to pay therefrom certain liabilities. *Held*, that the Circuit Court had authority to require him to account for the fund, and that he is chargeable with interest on so much thereof as he on receiving deposited in a bank to his credit as receiver, and then withdrew and deposited on his private account in another bank, he declining to explain the transaction, when he was examined as a witness by the master to whom the court had referred his accounts.

APPEAL from the Circuit Court of the United States for the Southern District of Illinois.

The facts are stated in the opinion of the court.

*Mr. G. W. Kretzinger* for the appellant.

*Mr. R. Biddle Roberts* for the appellee.

MR. JUSTICE MILLER delivered the opinion of the court.

The main features of this case, as presented here on appeal, are embodied in the following statement signed by counsel : —

" To obviate the necessity of examining a large part of the very voluminous record filed in this cause, the following statement is agreed upon between the counsel of the parties to this branch of the case.

" Levi P. Morton *et al.*, the holders of sundry bonds issued by the Gilman, Clinton, and Springfield Railroad Company, secured by a deed of trust made to Thomas A. Scott and Hugh J. Jewett, as trustees, filed a bill in the Circuit Court of McLean County, State of Illinois, seeking a foreclosure of the trust-deed and a sale of the property for their benefit.

" Shortly prior to the filing of this bill, Joseph J. Kelly had filed a bill as a stockholder of said railroad in the same court, and Francis E. Hinckley, a citizen of Chicago, had been appointed receiver, and continued to discharge the duties of such officer pending the proceedings in both cases against the road.

" On June 23, 1875, Thomas A. Scott and Hugh J. Jewett, the trustees named in the deed of trust, came into said Circuit Court of McLean County, and became parties to the said suit of Morton *et al.* against the railroad ; and from that time the litigation was carried on in their names, the receiver still acting in both cases, and reporting to the Circuit Court of McLean County.

" On the thirteenth day of December, 1875, the said cause was removed to the Circuit Court of the United States for the Southern District of Illinois, under the provisions of the act of Congress of March 3, 1875.

" Prior to this, on Aug. 12, 1875, the property was ordered to be turned over to the trustees under the provisions of the mortgage, by order of the Circuit Court of McLean County, and the receiver directed to settle his accounts up to that date ; and his accountability as such receiver ceased from the twenty-eighth day of August, 1875, the property having at that time been handed over by him to the agent of the trustees as aforesaid.

" The subsequent proceedings in the Circuit Court of the United States for the Southern District of Illinois aforesaid

were carried to completion, the sole parties then in court being the trustees and their *cestuis que trust*, and the said Gilman, Clinton, and Springfield Railroad Company and its receiver, all other parties having been dismissed from the record. The final decree having been had, and the road having been sold by virtue thereof and a deed for the same duly executed and approved by the said court, and no appeal ever having been prayed."

The remainder of the record before us consists solely of the proceedings in the Circuit Court of the United States against Hinckley as receiver, to bring him to account, resulting in a decree against him for $18,776.25, from which this appeal is taken.

The first appearance of appellant in the Circuit Court of the United States, as far as this record discloses, is by a report made to that court entitled as of the case of *Joseph J. Kelly et al.* v. *The Gilman, Clinton, and Springfield Railroad Company.* In this paper, after showing a balance of $12,799.78, in his hands as receiver, he proceeds to state sundry liabilities of that fund, for which he asks of the court an order that he may pay them. This report was filed March 23, 1876, and on that day an order was made that he pay the sum so admitted to be in his hands into court. It seems, however, that after this the whole matter of the receiver's account was referred to a master, on whose report, after exceptions by the receiver, the decree was rendered which is now under review.

The chief reliance of counsel in this court for a reversal of the decree is upon the proposition that Hinckley was never receiver of any other court but the McLean Circuit Court of Illinois, in the suit in which Kelly and others were plaintiffs, and that he could be called to account only by the court to which he was responsible in that suit.

But the agreed case shows that, shortly after his appointment as receiver in the Kelly suit, the foreclosure suit of Levi P. Morton and others, bondholders, was commenced in the same court, and afterwards adopted by Scott and Jewett, trustees for said bondholders, and that thereafter "the litigation was carried on in their names, the receiver still acting in both cases, and reporting to the Circuit Court of McLean County."

This is also stated in a previous paragraph.

We can reach no other conclusion from this agreement, in the absence of the record of the McLean Circuit Court on the subject, than that Mr. Hinckley was receiver in the principal case, which was removed into the Federal court. There is other evidence that it was so understood by Hinckley. The order of removal was made Dec. 13, 1875, and on the 23d of March, 1876, we find him reporting, without objection, to that court, and asking for orders in the nature of instructions as to the disposition of the money in his hands. For aught that appears, this report was his own voluntary act, as well as his duty.

Nor does any such objection appear in the exceptions to the master's report, nor was any exception taken to the order of reference.

It does not appear from this record that the Kelly suit was prosecuted any further after the removal of the foreclosure suit into the Federal court, nor do we know enough of its character to decide whether any thing of it was left after the order of removal, or whether its subject-matter was not necessarily removed with the other suit.

No attempt to bring Hinckley to account in the State court is shown.

Being voluntarily in the United States court, in a suit where the funds in his hands might properly be distributed, at least under supposable circumstances, and having money in his hands as receiver in the suit removed into that court, we can see no want of authority to make him account for these funds.

It is also urged that since the agreed facts show that the road had been finally sold and conveyed under the mortgage, the trustees had no right to the money in the receiver's hands. The sufficient answer to this is, that the decree from which this appeal is taken, merely orders the appellant to pay the money into court, and makes no order for its distribution. In that Mr. Hinckley has no interest, and when made it will be for other parties to contest it if they desire.

Two objections are taken by appellant to the statement of the account by the master. The first is that for nearly two

years' service the master allowed him only $10,000, whereas he ought to have allowed him $1,000 per month.

The principal witnesses of appellant to sustain this exception are two gentlemen who were themselves receivers of other roads, and thought they rightfully received $900 in one case and $1,000 in the other, per month. Perhaps they were the best judges of the value of their own services; but such is not always the case, and as there is conflicting testimony, and as this is the first time we have been called on to review the allowance made to railroad receivers by the circuit courts, we do not see that the economical administration of insolvent companies will be promoted, or that justice requires a higher standard of compensation than these courts generally give, to whose discretion the subject must be largely remitted.

Appellant also complains that he is wrongfully charged with $4,300 for the use of the money held by him as receiver. It does not very clearly appear how much of this money he so used, or how long he held it. But it does appear that the money as received was deposited in a bank at Springfield to his account as receiver, and that most of it was drawn from there on his check, and deposited to his private account with a bank in Chicago; and when on his examination as a witness he was asked to give explanations of this matter, and to state what sums he had so deposited, he declined to answer. Appellant was dealing with a trust fund. It was his duty to keep this money separate from his own. And if he used a bank for the custody of it, he should have had the account so kept as to show the fund to which it belonged. It was also his unquestionable duty, when called on in a proper case for accounting, as this was, to give all the information he had on the subject. His refusal to answer proper questions is wholly unjustifiable, and leaves his conduct open to criticism as to his motive.

As he had it in his power to furnish the facts on which a just and true account could be stated, and refused to do so, we do not in this appeal feel authorized to reverse the finding of the master and the decree of the Circuit Court.

*Decree affirmed.*