## *In re* HINCKLEY, Receiver, etc.

(*Circuit Court, S. D. Illinois.* July 21, 1880.)

1. RECEIVER—COMPENSATION—JURISDICTION—RES ADJUDICATA—STATE AND FEDERAL COURTS.—A. was appointed a receiver of a railroad: first, under a suit instituted by the stockholders; and, second, under a suit brought by the bond holders of a railroad company in a state court. The bond holders' suit was subsequently removed to the federal court, where certain questions connected with the compensation of the receiver were referred to a special master, who found a balance due from the receiver, which he was ordered to pay. Upon appeal this order was affirmed by the United States supreme court. Thereupon the stockholders' suit, which had been stricken from the docket of the state court, was re-instated, and the question of the compensation of the receiver referred to a master by the state court, who found a large amount due to the receiver for compensation and necessary expenditures. The bond holders took no part, however, in these proceedings in the state court. *Held*, under the circumstances of this case, that, where the receiver had paid into the federal court the amount decreed as due from him in the bond holders' suit, he could not, upon petition to the federal court, have such amount appropriated in part payment of what had been found due to him in the stockholders' suit by the state court.

*A. Biddle Roberts*, for bondholders.

*Higgins, Furber & Cothsan*, for Hinkley.

DRUMMOND, C. J. The petitioner was appointed receiver of the railroad, and took possession of it under the order of the circuit court of McLean county, in the case of *Kelly*, in December, 1873, in a suit brought by the stockholders of the railroad company. In June, 1875, certain bond holders of the railroad company filed a bill in the circuit court of McLean county, asking for a foreclosure of a trust deed which had been given to secure the bonds. This was a suit independent of the Kelly suit. At the same time, the trustees named in the said deed of trust became parties to the suit brought by the bond holders, and on August 11, 1875, the petitioner was directed to transfer, and did transfer, all the property in his possession to the trustees.

It would appear that, between the date of the bill filed by the bond holders and the time of this order for the transfer,

the receivership had been extended over from the suit by the stockholders to that of the bond holders, and he became thereby receiver in both suits. On December 12, 1875, the bond holders' suit was removed to this court, leaving the *Kelly Case* in the circuit court of McLean county. After this had taken place, the circuit court of the United States referred to a special master certain questions connected with the compensation of the receiver, and the amount that was due from him; and the master made a report to the court, finding a balance due from the receiver, which he was ordered to pay. From this order Hinckley appealed to the supreme court of the United States, and that court affirmed the order of the circuit court. 100 U. S. 153.

In the meantime the case of *Kelly* in the state court had been striken from the docket, but was re-instated after the affirmance of the decree of this court by the supreme court of the United States. Of course, when the case of the bond holders was transferred from the state to the federal court, all of the property of the railroad company was administered in and became subject to the order of the latter court. After the case of *Kelly* had been re-instated in the circuit court of McLean county, the accounts of Hinckley, with the question of the compensation to be allowed for his services, was referred to a special master, who reported to the state court, finding $24,535.80 due to the receiver for his services, and $1,000 for money necessarily paid out by him in the business of the receivership, which report was afterwards confirmed by the state court. Neither the bond holders, nor the trustees, nor any of their counsel took any part in these proceedings in the *Kelly Case* touching the compensation of the receiver, before the state court, or before the special master to whom the matter had been referred.

It is upon this state of facts that the petitioner now applies to this court, he having paid into court the amount decreed by this court as due from him; that this sum shall be appropriated in part payment of what has been found due to him by the state court, and the question is whether he is entitled to the order of this court for that purpose. I am clearly of

opinion that he is not.   The parties in this court who had an interest in the property are not bound by the action of the state court in allowing this compensation to the receiver.   In fact, the compensation which was due to the receiver for the services that he had performed came up as a question before the master appointed by this court, and the master made him a certain allowance for his services, which was sanctioned by this court in the order made, from which he took an appeal to the supreme court of the United States.   He took possession of the property in December, 1873, and turned it over to the trustees on August 12, 1875.

The master of this court allowed him $10,000 for his services as receiver, and after the property has come into this court, and after this court has passed upon the compensation which should be allowed him, and that whole question has been determined, to allow him to go to the state court, re-instate the case of *Kelly,* and ask for and obtain the action of the state court as to his compensation, and then come into this court and request it to treat this as *res adjudicata* and binding in this court, under the circumstances, would certainly be carrying the principle further than any precedent that I ever heard of would sanction.   The object has been so obviously for the purpose of obtaining money from this court which he has once reluctantly and under compulsion paid under its order, that I cannot do otherwise than dismiss the petition.