## MYRA A. BLODGETT'S ESTATE *v.* JULIUS CONVERSE'S ESTATE.
## ADELINE EDSON'S ESTATE *v.* SAME.
## MELISSA A. CONVERSE'S ESTATE *v.* SAME.

*Interest. Agent. Executors and Administrator.*

1. When a financial agent or attorney mixes the money of his principal with his own by depositing it in his general bank account, and draws it out and uses it in his own business, it is presumed that he has gained a benefit, and on failure to show how much he has derived from the use, he is chargeable for interest.

2. In such case, a request to settle, with an expressed willingness by the agent, but a neglect to do so, because neither party was quite ready to attend to it, is not equivalent to a demand for payment.

3. When an agent has interest-bearing securities in his possession belonging to his principal, the law presumes that he received the interest thereon; the burden is on him to prove that he had not received it; and without an explanation sufficient to relieve him from payment he is chargeable with the interest.

4. A married woman died testate, and in a short time her executrix deceased. No steps were taken for some time to have the will proved, and the husband of the testatrix had her estate in his hands. It was not found that the delay was caused by his fault; *Held*, that he could not be treated as an executor *de son tort;* and that he should only be held to exercise the care of a faithful agent.

APPEAL from the Probate Court.

The appellant filed the general counts in assumpsit.

Heard on the report of a referee, December Term, 1887, TYLER, J., presiding. Judgment *pro forma* in the Blodgett case to recover the sum of $455.83; in the Edson case, the sum of $6,406.45; and in the Converse case the sum of $629.89. Exceptions by the plaintiffs. The facts are sufficiently stated in the opinions of the court.

*N. L. Boyden* and *Davis & Enright*, for the plaintiffs.

The only question is as to the time when the reckoning of

interest should commence. The commencement of interest does not hinge on the time or fact of a demand. *Hall* v. *Peck*, 10 Vt. 474; *Mansfield* v. *Wilkinson*, 26 Iowa, 482; *Lewis* v. *Bradford*, 8 Ala. 652; Story, Agency, ss. 179, 205. It was the duty of Mr. Converse to keep the money on hand uninvested if he wished to be relieved from payment of interest. *McNeal* v. *Hodges*, 83 N. C. 504. In New York it has been held that an executor employing funds in business is chargeable with compound interest. *Berwick* v. *Halsey*, 4 Redf. (N. Y.) 18. And the same has been held in New Hampshire. *Griswold* v. *Chandler*, 5 N. H. 492; *Halsey* v. *Farmers' & Mechanics' Bank,* 26 Vt. 104; 1 Am. Lead. Cases, 522; *Hinckley* v. *Gilman, Clinton & Springfield R. R. Co.* 100 U. S. 591; 1 Perry, Trusts, p. 570; 2 Wend. 77; *Perkins* v. *Hollister*, 59 Vt. 348.

"As the administrator mingled the trust money with his own, he is chargeable with the highest legal rate of interest, and can be allowed nothing for his services in caring for the same." *McCloskey* v. *Gleason*, 56 Vt. 264; *Spalding* v. *Wakefield*, 53 Vt. 660; *Farwell* v. *Steen,* 46 Vt. 678; Am. Law Reg. (Jan. 1887) p. 27; 2 Esp. 702.

Mr. Converse was executor *de son tort* as to Mrs. Converse's estate. *Shaw* v. *Hallihan*, 46 Vt. 389; *Maxwell* v. *Briggs*, 17 Vt. 176; 2 Sedgw. Dam. 186–9. See *Hauxhurst* v. *Hovey*, 36 Vt. 544.

*William E. Johnson* and *J. J. Wilson*, for the defendant.

The matter pertaining to Arnold's estate cannot be settled except in a suit brought by his representatives. R. L. s. 2071. On the facts found in the Blodgett case Mr. Converse was not liable to pay interest unless he actually received interest, unless a demand was made for the principal, or until he was in default in not paying when he ought to have paid. The relation of debtor and creditor could not have existed until demand was made. *Hall* v. *Peck*, 10 Vt. 478; Chit. Con. 238; 1 Chit. Pl. 330; *Miller* v. *Clark*, 5 Lansing, 388;

*Williams* v. *Stoors*, 5 Johns. 353; *Chesworth* v. *Edwards*, 8 Ves. 46. An executor has no authority to loan money which a legatee is entitled immediately upon demand. *Jacot* v. *Emmett*, 11 Paige, 142.

It seems that there is a distinction between an action for not accounting, and an action for not paying over, the proceeds of goods sold, and that in the former case it is enough to show neglect to account within a reasonable time to maintain the action. *Cooley and Bangs* v. *Betts*, 24 Wend. 203.

Interest is only allowable when there is a contract to pay it, either express or implied, or when the party is legally in default. *Hauxhurst* v. *Hovey*, 26 Vt. 544; *Pawlet* v. *Sandgate*, 19 Vt. 621.

When there is no express contract to pay interest no implied contract arises, and it is not recoverable, except when the parties fail to claim payments after it was their duty so to do. *Brainerds* v. *Champlain Trans. Co.* 29 Vt. 154; *Sprague* v. *Sprague*, 30 Vt. 483; *Evans* v. *Beckwith*, 37 Vt. 285.

An agent receiving money for his principal, or an attorney for his client, is not liable for interest thereon, unless he has received special instructions to remit as fast as collected, or is in default in neglecting to render an account. *Hauxhurst* v. *Hovey*, *supra*; *Jacot* v. *Emmett*, *supra*; *Miller* v. *Clark*, *supra*; *Williams* v. *Stoors*, *supra*; *Chedworth* v. *Edwards*, *supra*.

The opinion of the court was delivered by

Ross, J. These cases were referred to the same referee, and stand for consideration on his reports which are dependent more or less upon his report in the principal case. The only contention upon all the reports is when and under what circumstances will the defendant estate be liable for interest. The persons whose estates are plaintiffs in interest, were sisters, and the last named was the former wife of the late ex-Governor Converse. He seems to have been the financial

agent of the three, for a good many years. He settled the estate of their father. He also settled the estate of Mr. Edson. Although some questions arose before the referee in regard to his relations to these two estates none is pressed before this court. Mr. Converse acted for the three sisters in the settlement of their brother Gardner Arnold's estate. The three received in all over twenty thousand dollars from this estate. Mr. Converse was the agent and attorney of the three, and as such received all the money from the executor of Gardner Arnold's will. He deposited the money thus received in his own name in connection with his own deposits in two banks. Most of it was received in 1868 and 1869, but some in 1872. He credited the three with the money as received, and as he paid out to, or invested it for, each, charged the general account with the payments and investments, and charged each sister with the payments or investments made for her. His bank accounts, which are referred to by the referee, show that within less than a year after he made deposits of money and funds received from Gardner Arnold's estate, he had drawn it all out and used it in some way. The investments for the earlier part of the time were for his wife and Mrs. Edson. He made some payments to Mrs. Blodgett, but no investments for her, but turned over some to her in 1875. She had a large balance in his hands all these years, on which the referee has allowed her estate no interest. After he had once withdrawn it from the bank, his accounts do not show that he replaced the amount so drawn out. The accounts show that he did not keep the money belonging to Mrs. Blodgett on deposit for her. Her estate claims interest on the amount he had in his hands, deposited in his general bank account in his own name, or at least interest on it after the accounts show that he withdrew and used the money. Mrs. Converse died in December, 1872. She made a will, and Mrs. Edson was the executrix named in it. She died in January, 1873, and the will was not proved until 1875. Mr. Converse had her estate in his hands all this time and did not pay it over entirely during his life. He

deceased in 1885. He also had Mrs. Edson's property in his hands when she died and did not fully settle with those entitled to her estate during his life. He was called upon to settle with all these estates in 1875, and frequently after, and expressed a willingness to settle, but it was never accomplished. In his account with his wife's estate, he made several charges to it of investments, and afterwards—but when was not shown—wrote against such charges " taken back." He had interest-bearing debts belonging to both the estate of his wife, and of Mrs. Edson. The referee has allowed interest on these, only so far as shown by his account that he received it, or his receipt was otherwise proved. The referee allowed no interest on the investments charged, and afterwards entered " taken back." In 1881 suits were brought against Mr. Converse in favor of these estates, and in favor of Mrs. Blodgett, who subsequently deceased. These suits were abated by the death of Gov. Converse. The referee has charged his estate with interest in favor of the three estates only when his books showed he received interest or it was otherwise shown, until the suits were brought, and has allowed interest on the balance found due each estate at the time the suits were commenced. It is claimed for the estates, in addition to what has already been stated for Mrs. Blodgett's estate, that the call for a settlement in 1875, was equivalent to a demand for payment, and that all three estates should be allowed interest on whatever was in his hands at that date, or at least that he should account for interest on all that was then in his hands from that date, or show some valid reason why he should not pay it. It is further contended that when interest-bearing debts and securities are once shown to belong to an estate or to have been charged to an estate by him, he could not take them back to his own use, without securing to the estate the interest it would have received from the investment—at least without showing good reason for taking the investment back—and that where interest-bearing investments are once shown into his hands, it is to be presumed he received the interest thereon ; that it was his duty to show

why he did not receive the interest as it became due from time to time, if he did not, and that without such showing his estate should be charged with all the interest that was legally due on such investments. While these claims do not all apply to all the cases, all arise in the cases. We are not so much troubled to ascertain the rules of law applicable, in general, to these several claims made in behalf of the plaintiff estates, as we are to apply them justly and fairly to the facts of these cases. Gov. Converse was evidently the trusted, confidential financial agent of these three women. Their relations were very intimate and friendly. His charges after he had received the money from Gardner Arnold's estate, for its care were small. It almost looks as though they intended he should make some profit from the use of their money unaccounted for. But this is not found by the referee, nor any facts from which an inference can be legally drawn. Not a settlement with any of them is shown by his books, unless it was with his wife. The immediate parties are all deceased. No one is left to tell us how they regarded these financial dealings, or what understandings they had in relation to them. Under such circumstances we know of no guide, except the well-established rules of the law. These must be applied to the facts as they have left them.

I. In regard to the money received from Gardner Arnold's estate for Mrs. Blodgett, which was deposited in his general bank account and drawn out and used, we think the law is well settled, that Mr. Converse was chargeable for interest from the time he used it. He received this money as her agent or attorney. In *Miller* v. *Clark*, 5 Lansing, N. Y. R. 390, it is said : " If an agent mixes the money of his principal with his own, and makes use of it, he is liable to pay interest on it from that time, or if he uses it separately, and makes a profit upon it, or puts it to interest while in his hands, the principal is entitled to such profit or interest."

" But as a general proposition, an agent is not liable to be charged with interest upon moneys received, and held by him

for the use of the principal. In order to render him liable for interest some other fact must be shown in addition to the mere receiving and retaining the money in his hands." Dunlap's Paley on Agency, 49, 50; *Williams* v. *Storrs*, 6 Johns. Ch. 353.

In *Lewis* v. *Bradford*, 8 Ala. N. S. 632, it is said: " Where one has the money of another in his hands and uses it, he cannot avoid the payment of interest, by answering that he does not know what profit was made by its use. In such a case he is, at least, liable for interest while it was so employed." We think this a clear and just statement of the law upon the subject.

To the same effect is *Hinckley, Recr.* v. *Gilman, C. & S. R. R. Co.* 100 U. S. 153, Bk. 25 L. Ed. 591; Wharton's Agency and Agents, s. 243. Mr. Wharton says: " An agent who mixes his principal's property with his own is liable for interest; and the burden of proof will be on him to distinguish the two masses. If he fail to do this, the aggregate may be charged to him as the principal's." He cites a large number of cases in support of this doctrine. The last sentence of the quotation implies that the agent derives a benefit from the use of the property. We should not be prepared to say that the agent or attorney who deposits his principal's or client's money to his own credit, in his general bank account, would thereby make himself liable for interest. But we think, when he has so mixed his principal's money with his own, and has used it by making drafts upon it for his own use, the law presumes he gains a benefit from such use; that he is thereupon called upon to show what benefit he has derived from such use, and on his failing to show the benefit derived, will be charged with interest upon it. *Hauxhurst* v. *Hovey*, 26 Vt. 544, is not opposed to these views. That case holds that an agent or attorney who collects and retains the money of his principal will not be chargeable with interest unless he has orders to remit as fast as collected, or the money has been demanded, or some other fact is shown to place him in legal default. The referee's re-

port does not show the amount of interest Mr. Blodgett's estate would be entitled to on this holding. The case will be sent to the clerk to have this computation made, and for other purposes hereafter indicated.

II. We do not think a request to settle with an expressed willingness on the part of Mr. Converse, but a neglect to do so, because neither party was quite ready to take up the matter, equivalent to a demand to pay over what was in Mr. Converse's hands. From all that is found, the reason the settlement was not made might have been quite as much the fault of the plaintiffs as of the defendant. The facts reported do not bring the case within the cases relied upon for the plaintiffs. In *Hall & Chase* v. *Peck & Co.* 10 Vt. 474, a demand for payment after the suit was dated, but before it was served, was held sufficient to authorize the commencement of the suit, and if the commencement of the suit, the commencement of interest, as damages. But in this case, with what accompanied it, the request for settlement cannot be held equivalent to a demand for payment. In *Gleason* v. *Briggs*, 28 Vt. 135, an attempt at settlement, in which each party denied the claims of the other, was held, a little doubtfully, to be a demand for payment by both parties. Says Judge REDFIELD, "they met and attempted to settle, which was fairly enough, perhaps, regarded as a demand or claim of payment upon both sides for what should happen to be due." This was said in upholding the action of the auditors in casting interest for both parties, as of that date. But as is said in *Hauxhurst* v. *Hovey, supra,* to authorize the allowance of interest against an agent or attorney, there should be something shown to make it appear "that the party is legally in default." This does not appear from the facts reported, when all are considered. This contention for the plaintiffs is not sustained.

III. We think, from the principles already stated, it follows that where an agent or attorney has interest-bearing securities in his hands belonging to his principal the law presumes

27

that he receives the interest thereon and the principal, and that the burden is cast upon the agent to show that he has not received the interest as it became due, nor the principal. By shoving such investments into the agent's hands, he is made accountable therefor. He cannot escape liability by silence, nor by saying, "I don't know what I received thereon." Nor does the failure of his account to show the receipt of interest remove his accountability therefor. The entries there made are made by himself, and his failure to make any entry does not account for what has been shown into his hands, nor for interest, which he should, and the law presumes he does, receive on interest-bearing securities. In short, an agent receiving money is to account for it as money without interest, unless he is shown to be legally in default in regard to its payment, and receiving interest-bearing securities, is to account for the principal and interest without further showing; and his failure to account for either is not an accounting; nor when he has once charged himself with interest-bearing securities, is the writing against such charge at some indefinite time in the future, "taken back," such an accounting. The moment the principal's funds were invested in such securities, they became the property of the principal, and the principal was entitled to the avails of such investments, principal and interest. The agent or attorney could not divert such investments to his own use, without liability for interest on the investments so diverted. By taking such investments, once vested in the principal, to his own use, without something further shown, the agent converts them to his own use, and should be charged with interest on their value, at least, until he replaces them with other interest-bearing securities. We do not mean to say the agent could not be allowed to explain such action in a manner that would relieve him from the payment or allowance of interest, but that without explanation, he is chargeable with interest.

IV. The plaintiff contends that Mr. Converse is to be treated as an executor *de son tort* of his wife's estate, and that

this would render him liable as for the conversion of the estate. But if under our system of settling estates this common law doctrine is applicable, of which there may be a doubt, *Shaw, administrator*, v . *Hallihan*, 46 Vt. 389,—we do not think it applies to Mr. Converse in this case. His wife died testate. The executrix died within less than a month thereafter. No steps were taken for some time to have the will proved. He is not found to have been in fault for the delay. In the meantime he had the estate in his hands. It needed caring for. We think that he should be held to exercise the care of a faithful agent or attorney for whomsoever should thereafter be appointed administrator with the will annexed. This contention of the plaintiff is not sustained. The referee has not stated, with sufficient particularity, the facts and dates, to enable this court to ascertain the exact sums for which judgments should be rendered in each of these cases. But the holdings on points one and three reverses the judgment of the County Court in the three cases and the matter is referred to the clerk to make on notice, the necessary computations of interest upon the facts found by the referee, in accordance with the views herein expressed, and judgment is rendered for each plaintiff for the sum so ascertained with costs, and the costs of the suit abated by the death of Mr. Converse ;—the judgments to be certified to the Probate Court.