## Edward H. Guyer v. Peter Auers.

### Gen. No. 4,765.

1.    MULTIFARIOUSNESS—*how question of, determined.*    The ques-
tion as to whether a pleading is multifarious must be determined
largely by the circumstances of each particular case, and its deter-
mination is to a certain extent discretionary.    The reason of the
rule against multifariousness is to protect a defendant from un-
necessary expense.    If the allegations of the bill fairly construed
show a single object and seek to enforce a single right, the bill
is not multifarious.

2. ULTRA VIRES—*when question of, cannot be raised by general demurrer.* A general demurrer does not raise the question of *ultra vires* upon the part of a corporation, to impose a restriction upon the defendant against the use of premises conveyed for the sale of intoxicating liquors, where the bill seeks to enjoin such use and alleges, among other things, that the land in question is held under a contract or conveyance containing such restriction.

3. ULTRA VIRES—*when party cannot claim that provision of contract is.* A party cannot claim rights by virtue of a contract and at the same time repudiate the restrictions contained in such contract which are not inconsistent with statutory law.

4. INTOXICATING LIQUORS—*when restriction against use of land for sale of, will be enforced.* A restriction contained in the conveyance of the fee of land which precludes the sale thereon of intoxicating liquors, if clearly imposed by the terms of the conveyance, will be enforced by injunction.

Bill for injunction. Appeal from the Circuit Court of Rock Island county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the October term, 1906. Reversed and remanded with directions. Opinion filed April 10, 1907.

PECK, MILLER & STARR and EDWARD H. GUYER, for appellant.

SEARLE & MARSHALL, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

Appellant filed the original bill in this case on June 24, 1903, praying for an injunction to restrain the appellee from engaging in the saloon business or maintaining a dram-shop on lot twelve, in block one hundred and seventy-four, in the town of East Moline. In October, 1903, an amended and supplemental bill was filed asking for the same relief against appellee as to lots twelve and thirteen in the same block. A general demurrer was sustained to the amended and supplemental bill, and judgment was rendered on the demurrer, dismissing the bill for want of equity, with costs against appellant.

The bill alleges that on August 1, 1895, the appel-

lant was the owner of three hundred and fifty acres
of land now embraced in the plat of the town of East
Moline; that on that day he platted the same into
2,000 lots in accordance with the statute in relation
to plats, and caused the plat to be duly certified,
acknowledged and filed for record in the recorder's
office of Rock Island county; that as a part of the
certificate of dedication, and recorded with it, appel-
lant made a stipulation, reservation and restriction
upon the face of said plat as follows: "With a view
of regulating the liquor traffic in the town herein
platted, the proprietor further stipulates that no land
herein platted shall ever be used for the sale of in-
toxicating liquors, without express permission be
given by the proprietor, his heirs or assigns, the right
to engage in said business being hereby expressly re-
served to the proprietor, his heirs or assigns. It is fur-
ther stipulated that all purchasers of lots accept title
subject to this reservation, and in accepting title cove-
nant not to violate this reservation and restriction."
The bill further alleged that on March 6, 1901, the
East Moline Company, acting on behalf of appellant,
made a contract with appellee for the sale of said
lot twelve to appellee. The contract contained the fol-
lowing provision: "It is further agreed by the party
of the second part, his heirs and assigns, that he and
they will be bound and hereby obligate themselves to
conform to the restrictions of the recorded plat, of
which the herein described premises are a part, and
that the warranty deed above provided for shall con-
tain a like obligation." It is alleged that appellee en-
tered into possession, erected a building thereon with
full notice of the reservation in said plat, but, not re-
garding said covenant and reservation, has obtained
a license to keep a dram-shop on said lot and is now
selling liquor thereon; that no leave or license has
been obtained by appellee or any one else from appel-
lant to sell liquor on said premises, and the same is
being done in defiance of and against the rights of

appellant; that the appellant is still the owner of a large number of lots in said plat, describing them, and the reservation of the right to sell liquor to appellant is a valuable one, and the property right in lot twelve is related to and connected with the right to sell liquor upon each of the lots in said plat; that the village of East Moline was organized in 1903, and has accepted the plat so far as the same is within its limits; that appellant has sold 300 lots and has never waived any rights reserved in the dedication, and purchasers have been attracted by the reservations and restrictions; that on March 6, 1901, appellee purchased lot thirteen in said block from appellant, and accepted a warranty deed containing a provision that the conveyance was subject to the reservations and stipulations contained in said plat; that appellee is now conducting a dram-shop on lot thirteen against the protest of appellant, and says he will continue to do so in defiance of the stipulation, reservation and covenant.

The relief sought in the bill is based upon the stipulation, reservation and restriction contained in the recorded plat, in the contract for a deed and in the deed under which appellee holds the lots, respectively. The demurrer being general only, any objections to the bill which are technical or formal cannot be taken advantage of under it. It is insisted by appellee that the bill is multifarious, which is a fault that may be taken advantage of by a general demurrer. The multifariousness claimed is the improper joinder of distinct, independent claims for equitable relief, in that relief is asked concerning two different lots. The allegations of the bill set up similar breaches of the same reservation or stipulation. Multifariousness is a fault not clearly defined, neither is there any settled or inflexible rule as to whether a pleading is or is not multifarious. It is a question that must be determined largely by the circumstances of each particular case, and its determination is to a certain extent discretionary. The reason of the rule against multifariousness

is to protect a defendant from unnecessary expense. If the allegations of the bill fairly construed show a single object and seek to enforce a single right, the bill is not multifarious. 14 Ency. Pleading & Pr. 197-202. The matters alleged in the bill are not inconsistent with each other, nor are they distinct or independent, but.they concern the effect of the same reservation or stipulation which it is alleged appellee is disregarding,. and the bill is not multifarious. If a cause of action, however, cannot be stated concerning lot twelve, a supplemental bill cannot be sustained by allegations concerning lot thirteen as to facts which have occurred since the beginning of the suit, but an original bill would be required to test the rights of the parties as to lot thirteen.

Appellee contends that under his contract for the purchase of lot twelve, and his deed to lot thirteen, he is entitled to the use of these lots free from the reservation or limitation as to the sale of intoxicating liquor that is contained in the plat, contract and deed. He insists that the reservation or stipulation against the sale of intoxicating liquor is (1) contrary to public policy, illegal, void and unreasonable; (2) that the East Moline Company is a necessary party, and (3) that the contract under which he went into possession of lot twelve being made to him by the East Moline Company is void, because "the East Moline Company being a corporation it was *ultra vires* in this state for it to have entered into such a contract pertaining to realty;" and that "before this suit can be maintained on a contract with the East Moline Company, it must affirmatively appear that such company has complied with the law of this state to enable it to legally transact business."

The bill as amended alleged that "The East Moline Company, acting on behalf of your orator, contracted with said Auers,  *  *  *  and which contract between said East Moline Company and defendant, on behalf of your orator, was ratified and approved by

your orator, which ratification and approval was then and there made known to and consented to by said Auers." The effect of this allegation is to state that appellant was the principal, and the East Moline Company was but his agent in making the contract. The bill contains no allegation as to what the East Moline Company is, except it says the "East. Moline Company of Moline, Rock Island county." Presumably it is a corporation. Corporations are not permitted to be organized in Illinois to deal in real estate, yet Illinois corporations formed for legitimate purposes may sell real estate acquired by them. It is alleged that appellant was the owner of the property when the plat was made and recorded. The East Moline Company when it made the contract with appellee had notice of the restriction or reservation, since the reservation in the plat is expressly referred to in the contract and states that the deed to be made thereunder is to contain the same obligation. The East Moline Company, if it was the owner of the lot, did not attempt to sell it disencumbered of the restriction attached to it when it received it, but gave appellee express notice of appellant's reservation by inserting it in the contract. This suit in no way seeks to interfere with the contract, but only to enforce the restriction in the plat, made a part of the contract by express agreement. The bill alleges, and the demurrer admits, that appellee took and holds possession under a contract he is now violating. The appellant has an especial interest in the preservation of his rights under the reservation contained in the plat, and made a part of the contract, which were being disregarded by the appellee alone. The East Moline Company was not infringing on appellant's rights. There was no more necessity for making the company a party than there would be for making intermediate grantors and grantees parties, if appellee's possession had been obtained through a number of *mesne* conveyances from appellant. The demurrer did not specially ques-

tion the necessity of other parties, but only questioned the equity between the parties to the suit. From the pleadings and the opinion of the circuit judge, which is printed in the abstract, it would appear this question was not raised in the Circuit Court. We hold that while the East Moline Company might be a proper party, yet the demurrer cannot be sustained on the ground of a defect of necessary parties.

Appellee claims the contract with the East Moline Company is *ultra vires,* and that for that reason the restriction contained in the plat and contract cannot be maintained, and that such restriction is therefore invalid. Appellee, by the demurrer, admits his possession of lot twelve is under and by virtue of the contract with the East Moline Company, acting on behalf of appellant. Appellee cannot claim rights by virtue of the contract and at the same time repudiate the restriction in the same contract, which is not inconsistent with statute law. Stevens v. Pratt, 101 Ill. 206; Eastern Building Assn. v. Bedford, 88 Fed. 18; Jacobs v. Miller, 50 Mich. 127; Lancaster v. Amsterdam Imp. Co., 140 N. Y. 586; Kelso v. Stigar, 75 Md. 402; Russell v. Railway, 68 Tex. 652. We conclude that the question of *ultra vires* cannot be raised by general demurrer.

Appellee insists that the reservation against the sale of liquor is against public policy, monopolistic, void and an interference with the functions of the municipality of East Moline. While a municipality has the sole right to issue a municipal license for the sale of liquor, it does not furnish a place for such sale. The applicant for a license must furnish the location. If he does not possess the right to sell liquor on the premises, the license cannot give him such right. The owner of a building cannot give the right to sell liquor therein, but the consent of the owner and the license from the municipality are pre-requisites to the right to keep a dram-shop. Appellant can neither license the sale of liquor nor give the right

to sell without a license. The proposition is clearly stated in Lehigh Coal & Nav. Co. v. Gluck, 5 Pa. Co. Ct. R. 662: ''While the state grants the license for a consideration, it does not stipulate to furnish a place for selling liquors, or that the real owner of the premises shall not assert his right to possession by action at law, whether it be based upon a superior adverse title or upon the defendant's contract. The defendant with ill grace calls upon the commonwealth to protect him in the violation of his contract. The policy of the commonwealth is to restrain the sale of intoxicating liquors, and it would be a contradiction of that policy to hold that a restraint upon the sale of such liquors imposed by the vendor in a grant of land was against public policy. The defendant having seen proper to accept a deed upon the express condition imposed must be held to a compliance therewith.'' The restriction in no way interferes with the functions of the municipality, but appellee has received the premises subject to a condition for the effect of which he can only blame himself.

''Public policy is that principle of the law which holds that no subject or citizen can lawfully do that which has a tendency to be injurious to the public or against the public good.'' People ex rel. v. Chicago Gas Trust, 130 Ill. 268 (292). The public policy of the state of Illinois in respect to the liquor traffic is in effect to tolerate the traffic under severe restrictions and heavy burdens calculated to prevent rather than encourage the traffic. The title of the Dram-shop Act is ''an Act to provide for the licensing of and *against the evils arising from the sale of intoxicating liquors.''* Revised Statutes, chap. 43. The law of this state, as announced in the decisions of the Supreme Court from the earliest reports to the most recent, recognizes the universal fact that evils do arise from such sales, denounces such evils and recognizes them as a proper subject for police regulation and for restriction. ''The liquor business is one peculiarly sub-

ject to the police power on account of the multitude of evils which result from it. Police regulation of that business has always been sustained, as having for its object the prevention of intemperance, pauperism and crime, and diminishing, as far as practicable, the injurious consequences to the public resulting from the business." City of Chicago v. Netcher, 183 Ill. 104. "It is clearly within the police power to prohibit all sales of liquor on the ground that dram drinking is an evil to the person and pernicious to the welfare of the public." Dennehy v. Chicago, 120 Ill. 627. "Statutes regulating or prohibiting the sale of intoxicating drinks have been sustained as constitutional enactments on the ground they were adopted in virtue of the police power for the prevention of intemperance, pauperism and crime, and for the protection of society, and the health, morals and safety of the community against the evils that, in the view of the lawmaking body, follow the unrestricted sales at retail of intoxicating liquors and the consequent abuse of the use of such drinks." People v. Griesbach, 211 Ill. 35; People v. Cregier, 138 Ill. 401; Crowley v. Christensen, 137 U. S. 86; 17 Am. & Eng. Ency. of Law, 206, 2nd Ed.

Restrictions on the liquor traffic are not governed by the same rules as the same restrictions would be when applied to the ordinary and legitimate avocations of life. Restrictions on the liquor traffic are in the interest of good government, good morals and good order, and mitigate crime, misery, want, beggary and vice—evils which the liquor traffic fosters. "From an early period in civilization in all countries the unrestricted sale of such drinks has been regarded as pernicious." "These restraints are not like such as restrict the ordinary avocations of life, which advance human happiness or trade · and commerce—that neither produce immorality, suffering and want. This business is, on principle, within the police power of the state, and *restrictions which may rightfully be im-*

*posed upon it might be obnoxious as an illegal restraint of trade when applied to other pursuits."* Schwuchow v. Chicago, 68 Ill. 444; Chicago v. Netcher, *supra;* People v. Griesbach, *supra.* As the law declares the sale of intoxicating liquor to be a public evil, a contract preventing the sale of liquor in a town is valid and cannot be considered against public policy. Sell v. Branen, 70 Ill. App. 471; Cowell v. Colorado Springs, 100 U. S. 155.

In Wakefield v. Van Tassell, 202 Ill. 41, where the restriction in the deed was against the construction of a grain elevator, in discussing what is public policy, it was said: "So long as the beneficial enjoyment of an estate conveyed in fee simple is not materially impaired by restrictions and conditions contained in a deed, such restrictions and conditions as to the mode of its use are held valid. Just so the enforcement of these conditions by the courts arises from the principle of law that every owner of the fee has the legal right to dispose of his estate, either absolutely or conditionally, or to regulate the manner in which the estate shall be used and occupied as the grantor may deem best and proper. * * * Just so long as the conditions and restrictions are not violative of the public good or subversive of the public interests they will be enforced. * * * It is not the interest of the parties alone which is to be considered the true test, but in each particular case, under the facts, the judicial inquiry is, will the enforcement of the condition be inimical to the public interests? (Davies v. Davies, L. R. 36, Ch. Div. 364.) * * * But where the condition is made in good faith and stipulates for nothing that is *malum in se* or *malum prohibitum,* before the court should determine the condition to be void, as contravening public policy, it should be satisfied that the advantage to accrue to the public for so holding is certain and substantial and not theoretical and problematical. (Kellogg v. Larkin, 3

Pinney 123; 3 Chand. 133.) So it has been universally held that conditions in deeds restraining the grantor from selling intoxicating liquors upon the premises are valid.'' Such restrictions and conditions against selling liquor have been sustained in Star Brewery Co. v. Primas, 163 Ill. 652; Sell v. Branen, *supra;* Catt v. Tourle, L. R. 4 Ch. App. 654 (in which the reservation was similar to the one at bar); Whitney v. Union Ry. Co., 11 Gray, 359; Collins Mfg. Co. v. Marcy, 25 Conn. 242; Sutton v. Head, 86 Ky. 156; Newbold v. Peabody House Co., 70 Md. 493; Sioux City & St. P. Ry. Co. v. Singer, 49 Minn. 301, 15 L. R. A. 751; O'Brien v. Wetherell, 14 Kans. 616; Plumb v. Tubbs, 41 N. Y. 442; Cowell v. Colorado Springs Co., 3 Col. 82; 100 U. S. 155; Johnson Co. v. Covats, 22 Ohio C. C. 206.

That the policy of this state has always been in favor of the restriction and prohibition of the liquor traffic is also shown by the many special charters granted by the state to cities, under the constitution of 1848, absolutely prohibiting the sale of liquor within their limits. Many of these charters, in some instances covering several square miles, are still in force and are retained and preserved by the cities so incorporated as more valuable, because of this prohibitive clause, than the broader powers and rights given to cities under the general city and village act. In 1851 the charter of the Northwestern University, located at Evanston, was amended by an act of the legislature so as to prohibit the sale of liquor within four miles of the university. This act was held constitutional and valid in O'Leary v. Cook Co., 28 Ill. 534. The land platted by appellant only extended over 350 acres, and the area covered by the restriction is comparatively limited, when compared with the prohibitory districts which have in other cases been held constitutional when created by the legislature. The lots upon which appellee seeks to sell liquor are on the margin of the tract. The language of the restriction is clear, unambiguous and

not susceptible of a doubt of its meaning. While it is true, that where land is conveyed in fee restrictions in its use are not favored, yet it is also true, that where the intention of the parties is clear in the creation of restrictions upon the use of a grantee, courts will enforce the same by injunction. Hutchinson v. Ulrich, 145 Ill. 336; Star Brewery Co. v. Primas, 163 Ill. 652. The liquor business in this state being regarded as a deplorable evil, any covenant or reservation that restrains such business is neither against public policy nor contrary to law, nor an illegal restraint upon trade, and such restrictions should be upheld. Appellant still owns part of the platted territory, and it would be an impairment of his contract rights to hold the reservation void. To hold the clause in the contract and deed against public policy and void would be both to deprive him of his property, and against the long-established policy of the state concerning the liquor traffic. The judgment is reversed and the cause remanded, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*