NORFOLK's Ex'r. *de son tort*, vs. GANTT.

ERROR to *Calvert* County Court. An action of *debt* was brought on a *single bill*, by the defendant in error, against *James Norfolk* in his life-time, to which he appeared and pleaded *payment*. His death was afterwards suggested, and a summons issued for the plaintiff in error, as executor *de son tort*, to appear and defend the action, who being summoned, appeared, and afterwards confessed the action, and that the debt demanded was due to the defendant in error, together with a sum as damages and costs. Upon which an *auditor* was appointed to ascertain the sum for which judgment should be rendered, according to the act of 1798, ch. 101, *sub* ch. 8, s. 9. The auditor reported, that it did not appear by the records of the orphans court of the county that any administration had been granted on the estate of the deceased, so that he

On the death of a defendant in an action of debt, &c. a summons may issue to an executor *de son tort*, (there being no legal executor or administrator of the deceased,) to appear to and defend the action. Where an executor *de son tort*, being summoned, appeared to an action of debt brought against the deceased, and confessed the action, and admitted the debt was due to the plaintiff, an auditor was then appointed to ascertain the sum for which judgment should be rendered, regard being had to the assets, &c. according to the act of 1798, ch. 101, *sub* ch. 8, s. 9. This appointment of auditor was afterwards stricken out by the county court, and a judgment was rendered on the confession above mentioned, for the debt and costs, de bonis testatoris, si non de bonis propriis as to costs. Error being brought, the judgment was reversed by the court of appeals.

1809.

Norfolk
vs
Gantt

could not say what assets, if any, were in the hands of the plaintiff in error. The record states, that the auditor, who had been appointed, on refusing to act, was ordered to be struck out, and another person was appointed in his place. After which, on motion of the defendant in error, it was ordered by the court, that the appointment of auditor so made be struck out, and on his prayer that the court would "enter judgment on the confession" of the plaintiff in error, "so as aforesaid made in the plea aforesaid," the court entered judgment against the plaintiff in error, for the debt and damages and costs, *de bonis testatoris, si non de bonis propriis* as to the costs. To reverse which judgment the present writ of error was brought.

The cause was argued at June term 1808, before TILGHMAN, POLK, and BUCHANAN, J. and was reargued at the present term before CHASE, Ch. J. POLK, BUCHANAN, NICHOLSON, and EARLE, J.

*Key*, and *Johnson* (Attorney General,) for the plaintiff in error, contended that there was no privity in law or otherwise between an executor *de son tort*, and the deceased, and he could not regularly be summoned and made a party. The act of 1785, *ch.* 80, does not justify it. An executor *de son tort* can only be resorted to by an original action against him. There can be no judgment against him but of assets proved to have come to his hands. The act of 1798, *ch.* 101, directing the appointment of an auditor, does not take in the case of an executor *de son tort.* It only relates to cases where letters testamentary or of administration have legitimately issued. It is by no means clear, that confession of judgment by an executor *de son tort* would be correct, if he admitted assets, provided the action was not originally brought against him. The court could not give judgment for a portion of the assets against such an executor. Here the court entered judgment for the debt and damages confessed, and costs, to be levied of the goods of the deceased, if the executor *de son tort* had so much in his hands; and if not, then the costs to be levied of the goods of the executor. This is not a legal and correct judgment. A judgment against a wrongful executor should be *de bonis propriis* for the amount of assets charged and proved in his hands, but there can be no judgment against him of assets *quando acciderint*, as

against a rightful executor. Upon the death of *James Norfolk*, instead of making the executor *de son tort* a party, he should have been proceeded against by a new action. Under the act of 1785, *ch.* 80, an executor *de son tort*, not being a representative of the deceased, there could be no continuity of the proceedings against him; and that act never meant to embrace a wrong doer; it intended to provide only for the legal party being made plaintiff or defendant in place of the deceased. The making an executor *de son tort* a party, may be likened to the case of an ejectment where the defendant dies, and a person enters into possession who has no right; and it will not be contended that such person could be made a party in the place of the deceased defendant? There may be a rightful and wrongful executor of the same person. Does the act of assembly contemplate that the wrongful executor may be made a party, and not the proper executor? Suppose, after the death of *James Norfolk*, three persons had each taken a horse, the property of the deceased, could all three be brought into court, and be made defendants in the place of the deceased? Though each might take a horse, yet they were not bound for each other. There can be no hardship in this case, as the plaintiff below might have administered on the estate of the deceased, if there was no legal administration. The judgment is manifestly erroneous; and if the executor *de son tort* could be made a party under the act of 1785, the judgment should have been *de bonis propriis*, and not *quando acciderint*. The court below entered the judgment, although the executor *de son tort* did not confess that he had assets. He only confessed the sum due, and did not admit that he had assets. The act of 1798, *ch.* 101, was made a pretext for the appointment of an auditor, although that act was made to protect rightful executors, so that the assets might be apportioned. The court nevertheless struck out their appointment of an auditor, and entered judgment upon the confession. An executor *de son tort* is not affected by the act of 1785, *ch.* 80; if he is, he is equally affected by the act of 1798, *ch.* 101. If he could be legally made a party, the judgment could not be entered against him, but in pursuance of the act of 1798. The proceedings being clearly erroneous, the judgment must be reversed.

*Magruder*, for the Defendant in error. It has been contended that the judgment of the court below must be reversed, because it is against an executor *de son tort*, who it is said cannot be made a party, under the act of 1785, *ch.* 80, to the original action. The correctness of this idea will be questioned; but to obtain a reversal of the judgment, something more is necessary to be shown. It is necessary to prove, not only that the action cannot be continued against an executor *de son tort*, but also that he can avail himself of the objection in a court of error, and after he has confessed judgment in the court below.

1. Before the act of 1785, the death of either party abated the suit. Upon the death of the defendant, the plaintiff was obliged to proceed *de novo*. The inconvenience of this was felt, and to remedy it, was the evident intent of the legislature in making the act of 1785, *ch.* 80, where it is declared that no action shall abate by the death of the defendant, but the executor, administrator, or "other proper person to defend," shall be made a party. If an executor *de son tort* cannot be made a party defendant to the original action, what meaning will be affixed to these words of the law, "other proper person to defend?" The words unquestionably include executors *de son tort*, who are responsible to the plaintiff on account of the assets in their hands, and who are proper persons to defend the original action under the law of 1785; because, before the passage of that law they were liable in an original action. The intention of the legislature unquestionably was, that the old suit should be continued against any person against whom a new action could be instituted; and that executors *de son tort* may be made parties to the original suit, is evident, not only from the intention of the legislature, but the words of the law. Indeed, these words, "other proper person to defend," seem to have been introduced *ex abundanti cautela*, and to prevent the possibility of an abatement of the original action, if there can be found any person, who, having in his hands assets of the original defendant, is, to the amount of them, responsible to the creditors. Every person who takes possession of the assets of a deceased debtor, is, in respect to creditors, the executor; and whether the possession of them has been rightfully or wrongfully acquired, are responsible as executors to the amount of those assets, to the creditors. It is no defence

1809

Norfolk
vs
Gantt

by a man who has seized upon the fund for payment of debts due from a deceased person in actions by creditors, that his possession of them is not legal. The creditors are not bound to enquire whether the possession is rightful or wrongful. The plaintiff in error would not have been allowed, in the court below, to avail himself of such a defence. It is true that an executor *de son tort* cannot be made a plaintiff in the original action; because he has no right to demand the debt, and before the act of 1785, he could not have brought an action for the recovery of it. Under the act of 1785, any person can be made a party defendant against whom the plaintiff in the action could have proceeded in an original suit, to be brought before the passage of that act. It is asked, how is a plaintiff to proceed if there be several executors *de son tort*—can he make only one of them, or is he at liberty to make all of them, parties to the original suit? An answer to this is not necessary. It is sufficient to say, that he may make as many of them parties to the original suit as he could to a second action to be brought by him upon the abatement of the first. But if this be not a sound construction of the act of assembly, yet it remains to be enquired,

2. Whether the plaintiff in error is not too late with his objection? It may be true that an executor *de son tort* is not a proper person to defend the original action, and therefore is not to be made a party to it, yet it is apprehended, that this defence ought to have been made in the court below; and having been waived there, cannot be relied upon in error. Leave is given to the plaintiff to make a proper party, and because he suggests to the court that the plaintiff in error was a proper person to defend the suit, a summons is directed to him to appear *and show cause why the suit should not be continued against him.* It was not incumbent upon the plaintiff below to show for what reason the suit might be continued against him—in what relation he stood to the debtor, or to the fund; being suggested to be a proper person to be made a party to the suit, he is required to appear and state his objections to a judgment being recovered against him. If there were not in his hands assets sufficient to discharge the plaintiff's claim in due course of administration, this might be shown; and if pleaded, the plaintiff could only recover against him upon proof of assets. But if this is not pleaded, the judgment would

of course be for the amount of the plaintiff's claim So too, if not a proper person to be made a party to the suit, this ought to have been stated to the court, either at the time of his appearance, or by plea, and whether he was or was not, being in some measure a question of fact, would have been examined, where alone it could be examined, in the court below. Instead, however, of making this defence, or of showing any cause why he should not be made a party, he has confessed judgment, and thereby admits himself to have been a proper person against whom the original suit was to be continued. Having, by his confession of judgment, acknowledged himself to be the proper person to defend the suit, the objection, now so strenuously urged against an affirmance of the judgment, cannot be heard in this court. It is true, indeed, that in the summons which was issued against him, and which the clerk has unnecessarily copied into the record, he is styled executor *de son tort*. Whether this proceeded from any knowledge possessed by the clerk that letters testamentary had not been granted to him, or from his ignorance that a rightful executor and an executor *de son tort* were different characters, does not appear, and is wholly unimportant. The appellation given to him in the summons cannot be resorted to in proof of his being an executor *de son tort*. The summons does not belong to the record—it makes no part of the pleading, and was not necessary to have been issued. Any incorrectness in it cannot prejudice the plaintiff below. It might have been directed to any other person—might have stated *John Nokes* as the proper person to appear to the suit; and might have mistated the names of the original parties, and. the nature of the action; yet if the plaintiff in error chose to appear to the suit, and in place of showing cause below why judgment should not be given against him, to confess judgment, he cannot afterwards come into a court of error and claim a reversal of the judgment, because of any false description, or blunders of the clerk in the summons. If A bring an action against B, and his writ state him to be executor of C, yet he may afterwards declare against him for a debt due from himself, and after a judgment by confession, or upon verdict, in the court below, it would be strange if in error his counsel urged that he was sued as executor for a claim due from himself. Whether the plaintiff in error was a rightful or wrongful

executor, is a question which cannot be examined here. It is a question of fact. The counsel for the plaintiff in error contend that this court is competent to decide it, and they produce for their testimony the *subpena*, which they say is conclusive evidence of the fact. The plaintiff in error is precluded by his confession of judgment in the court below from denying himself to have been the proper person to be made a party to the action, and in this court must be considered as the executor of the original defendant.

3. Objection has been made to the form in which the judgment is stated. It seems, however, to be such a judgment as must be recovered against an executor. The plaintiff in error made no defence in the court below. He could not gainsay the debt, and therefore the sum due to the plaintiff below is first ascertained. While a provision of the act of 1798, *ch.* 101, was in force, he was not bound to plead *plene administravit*, and refusing to admit a sufficiency of assets, the court were obliged to appoint an auditor. Thus far unquestionably the proceedings were regular, and the record is correct. But the appointment of auditor is afterwards stricken out and a judgment is entered, which the record states to be given upon the "confession of the defendant in the plea aforesaid." *Herein all the error lies.* It has been said that the confession did not warrant the judgment—that the confession was, that he could not gainsay the debt, and the court, by giving judgment "upon his confession in the plea aforesaid," have undertaken to say that he had assets, without any proof before them; for his confession was a denial of it. This however seems to be quarrelling with forms. The record, if correctly understood, will certainly show that the judgment was properly entered. The *plea aforesaid*, (however strange an expression it may be, as here introduced,) relates to the reference to an auditor to ascertain assets. *Plene administravit*, though not pleaded, became unnecessary by the act of 1798, *ch* 101, is supposed to be the defendant's plea, and is certainly the only plea on which he ever pretended to rely. The confession spoken of is a confession with respect to that plea, and of a sufficiency of assets. It is a confession made by the defendant after the appointment of an auditor, and in consequence of which the appointment was stricken out, and

judgment entered according to it. In a few words, the defendant at first admitted the debt to be due, but would not confess assets. In consequence the sum was ascertained, but an auditor was appointed to ascertain the amount of assets. The party afterwards confesses there were assets sufficient, and in consequence the appointment of auditor was stricken out, and upon his own confession of a sufficiency of assets in his hands to discharge the debt, the court entered against him the judgment, which in all such cases is given. It is said to have been given upon motion of the plaintiff. But this is the form of entering all judgments by confession. The whole proceedings are regular, unless, because an auditor had once been appointed to ascertain the amount of assets, it was not in the power of the parties to take the subject out of his hands, and ascertain, by their own confession, the fact which it was the sole purpose by the reference to determine. The forms of records might indeed be more correctly and elegantly expressed, but these are forms to which we are most accustomed, and have in them sense enough to prevent the reversal of a judgment, to which the consent of the party was had in the court below.

THE COURT considered that the summons for the executor *de son tort* to appear and defend the action, issued regularly, and that the executor *de son tort* could be made a party to the action; but that the entry of the judgment was erroneous.

JUDGMENT REVERSED.