FIRST NATIONAL BANK OF HAILEY, IDAHO, AP-
PELLANT, *v.* HIRAM D. LEWIS AND J. S. LEWIS,
AS EXECUTORS, AND OTHERS, RESPONDENTS.[1]

1. ACTION ON FOREIGN JUDGMENT.—ESTOPPEL.—EXECUTORS DE SON
TORT.—Where in an action pending against him in Idaho, the
defendant dies, and executors of his estate, also legatees,
legally qualified under the laws of Utah, voluntarily appear
as such in the action, on suggestion of their testator's death
without ancillary administration, and adopt the answer of
their testator, and judgment is rendered against them, the
executors are estopped, in an action on the judgment in Utah
seeking to charge them, as executors *de son tort*, from denying
the validity of the judgment on the ground that they were
not in fact in such action executors.

2. ID.—JUDGMENT AGAINST EXECUTORS DE SON TORT.—A judgment
in an action brought on an Idaho judgment, charging execu-
tors duly qualified under the laws of Utah as executors *de son
tort*, is not binding on the estate in Utah.

3. ID.—ID.—COMPLAINT.—In an action against executors *de son
tort*, the complaint must charge them as executors generally.

4. ID.—ID.—ID.—SURPLUSAGE.—Where the complaint clearly seeks
to charge the defendants as executors *de son tort*, an allega-
tion therein of presentation of the claim sued on against the
estate and rejection thereof will be regarded as surplusage.

(No. 578. Decided Aug. 31, 1895. 41 P. R. 712.)

APPEAL from the District Court of the Fourth Judicial
District. Hon. James A. Miner, *Judge.*

Action by the First National Bank of Hailey, Idaho,
against H. D. and J. S. Lewis, as executors of the estate
of J. S. Lewis, deceased, and others, on a judgment
obtained in Idaho. There was a judgment for plaintiff,

---

[1] Rehearing denied Dec. 21, 1895.

and, from an order granting a new trial, it appeals. *Reversed.*

*Messrs. Brown & Henderson,* for appellant.

It will be seen that the judgment which was vacated by the order granting a new trial, was a judgment against the defendants personally, and is not a judgment against the estate. In order to understand fully what the judgment is, reference is here again made to the issues in the case. The judgment is against the defendants as executors *de son tort.* The complaint is against them as executors in the ordinary way. This is the proper way in which to bring a case against executors in their own wrong. The complaint or declaration names them as executors or administrators generally, the same as though they were in all respects proper and legal administrators. 1 Werner on Law of Adm. § 193; 1 Williams on Executors (Randolph & Talcott Ed.), 311; *Sawyer* v. *Thare,* 70 Me. 340–1; *Brown* v. *Leavitt,* 26 N. H. 493–5; *Shaw* v. *Hallihan,* 26 Vt. 389; *White* v. *Mann,* 26 Me. 361; *Lee* v. *Chase,* 58 Me. 432; 7 Am. & Eng. Enc. of Law, 187. The complaint itself sets forth a cause of action which might be good as against the estate in this territory. It sets forth a valid judgment against the executors in Idaho.

The defendants in their plea have pleaded only as to the judgment that they were not executors, that is *ne unques executor.* A person sued as administrator or executor may plead that he is not indebted, *ne unques executor,* and *plene administravit.* He may plead them together, and this is true whether he is an executor or administrator *de jure* or *de son tort.* 1 Williams on Executors, *supra;* 1 Werner on Adms. § 194. The defendant in such action, even though he be executor *de son tort,* may plead all these pleas and succeed upon any of them, but if he plead but one of these pleas, the others

stand admitted. That is to say, if he pleads that he is not executor, then the fact that he has in his possession and appropriated of the property of the deceased sufficient to pay the debt stands admitted. An executor *de son tort* is not liable beyond the property he has received from the deceased any more than an executor *de jure.* But in order to take advantage of that fact, he must deny that he has received the assets or plead and prove that he has fully administered and paid out all that he received lawfully. 1 Williams on Executors, 312–13. In this case, therefore, it will be seen that the only plea here was that they were not executors. This, then, was an admission that if the issue which they had raised, that is, that they were not executors in Idaho, was found against them, it stands admitted that in Idaho they had received sufficient assets to pay this debt. Under the statutes of Idaho, by the death of Lewis, who had been regularly served, the cause did not abate, but would proceed against his estate in Idaho. It was the right of the plaintiff in that suit to bring in the personal representatives. The defendants here were the personal representatives. They were the executors appointed in the will. The plaintiff revived the suit as against them and they came in voluntarily and appeared in that action as executors. The cause was litigated and they were defeated and a judgment rendered against them, and when they are sued in this territory as executors *de son tort* they are estopped to deny in fact that they were not executors there, and that is the only question there was in this case. *Davis* v. *Connolly,* 4 B. Mon. 136; *Gleason* v. *Dodd,* 4 Met. (Mass.) 333; *Moss* v. *Rowan,* 66 Ky. (W. P. Bush) 505; Bigelow on Est. 275 and note; Werner on Adm. § 164, note 4; *Newark Sav. Inst.* v. *Jones Ex'rs,* 35 N. J. Eq. 406; *Brown* v. *Brown,* 35 Minn. 191; *Jones* v. *Morgan,* 36 Conn. 348; *Dearborn* v. *Mathes,* 128 Mass. 194.

As shown by the authorities before cited, assuming to bring an action or defend an action as an administrator or executor in a foreign jurisdiction, without having ancillary proceedings in the foreign jurisdiction is such an intermeddling with the estate as to create the party an executor *de son tort.* It is to be noted in this connection the difference between executors and administrators. Executors appointed by the will wherever they act, in whatever jurisdiction, derive their authority from the will itself. It is a power of attorney and under it they are acting. Administrators act in an entirely different capacity. They take their authority only from the law and nothing else. The law of jurisdiction where the party died appoints an administrator. When he passes beyond that jurisdiction into another and there prosecutes ancillary proceedings, he acts there under the law. The law in one place may be one thing, and in another, it may be another thing, and in each case the law governs; but as to executors, they are always and all the time acting under the will and that is the instrument from which they derive their authority, and all the executors whenever they act, are in privity of estate with each other. 2 Black on Judg. §§ 562–3; 1 Werner on Adms. § 171; *Hill* v. *Tucker,* 13 How. 462. The record shows that an attorney in good standing appeared for the executors in the Idaho court. The executors could defend on the ground that the attorney had no authority to appear for them, but they have not seen fit to do this. The recital on the judgment concludes them and is *prima facie* that he was authorized to appear for them. 2 Black on Judg. §§ 898–903; *Piggott* v. *Addicks,* 56 Am. Dec. 547; *Roselius* v. *DeLaclaise,* 52 Am. Dec. 597; Bigelow on Est. 293; *Gleason* v. *Dodd, supra.*

*Messrs. Kimball & Kimball* and *. Messrs. Maloney & Perkins,* for respondents.

The Idaho judgment was not admissible in evidence for the reason that the Idaho court at the time of the rendition of the judgment had no jurisdiction to render judgment against respondents as executors upon the claim sued upon. The probate law of Idaho upon this subject is the same as our own. There being no evidence in the record of what the statute of Idaho is, the presumption is that it is the same as our own, and the Idaho judgment is inadmissible in evidence unless it appears from the record that it would be admissible under the provisions of our own statute. *Norris* v. *Harris,* 15 Cal. 226; *Brown* v. *The San Francisco Gas Light Co.,* 58 Cal. 426; *Marsters* v. *Lash,* 61 Cal. 622. The Idaho judgment was not admissible in evidence in court below for the following additional reasons: The legal effect of such admission would be to validate the proceedings of the Idaho judgment. In other words it would remove the assets of the estate of the decedent, J. S. Lewis, from Utah to Idaho. A large portion of the estate would have to go to Idaho and be applied in satisfaction of the Idaho judgment. The executors must account for all the assets of their testator to the probate court of their appointment. This is the probate court of Weber county, Utah. If a Utah court were to permit this to be binding on the said heirs or legatees or even on the estate of the said testator, it would complicate the affairs and business of the estate and would work great hardship thereon. The recitals in the judgment roll from the Idaho court is not conclusive on the executors in Utah. This question has been put at rest by the Supreme Court of the United States. *Thompson* v. *Whitman,* 18 Wall. 457; *Knowles* v. *Gas Light Co.,* 19 Wall. 58; *Pennoyer* v. *Neff,* 95 U. S. 714; *Johnson* v. *Powers,* 139 U. S. 156; *Braithwaite* v. *Harvey,* 36 Pac. 38; *Johnson* v. *Wallace,* 8 Am. St. Rep. 742; *Fugate* v. *Moore,* 19 Am. St. Rep. 926; *Wright* v. *Andrews,* 130 Mass. 149; *Kingbury* v. *Yniestra,* 59 Ala.

320; *Napton* v. *Leaton,* 71 Mo. 358; *Ferguson* v. *Crawford,* 70 N. Y. 259.

Nowhere does the Idaho record disclose the fact that these executors in person or in writing ever entered their appearance. If they entered their appearance merely for the purpose of contesting the jurisdiction of the court, such appearance will not, it seems, give the court entire jurisdiction over them. *Walling* v. *Beers,* 120 Mass. 548; *Wright* v. *Andrews, supra; Bissell* v. *Brigs,* 9 Mass. 462, 468-69; *Wright* v. *Boynton,* 37 N. H. 9; *Cunningham* v. *Goelet,* 4 Denio, 71. Mr. Chancellor Walworth in *Mc-Namara* v. *Dwyer,* 7 Paige (N. Y.), 239, 241, held that although a foreign administrator could not sue, he might be sued in another state for an account of the assets received under the foreign administration. Can such a distinction be maintained? The Supreme Court of the United States in *Vaughan* v. *Northrop,* 15 Pet. decided against it. *Bond* v. *Graham,* 1 Hare, 482; *Price* v. *Dewhurst,* 4 My. & Cr. 76-80. "Foreign executors and administrators cannot merely by virtue of their offices, either prosecute or defend actions in the courts of other states. In some instances the disability has been removed by statute; but where that is not the case, and the representative has not removed the assets or some portion of them into the state where action is brought, the prohibitions of the common law prevails." *In re Webb,* 18 N. Y. 124; Schouler's Exec's & Adms., note 3, § 15. A judgment against a personal representative is not binding on a personal representative of the same estate in another state and is no evidence of debt. Freeman on Judg. § 163; 18 Howard, 16; *Stacy* v. *Thrasher,* 6 How. 44; 2 Rawle, 431; Storey on Conflict of Laws, 563. In the note by Robert Desty to *McNamara* v. *Dwyer,* 4 L. C. Ed. of New York Chancery Reports, p. 140 S. C., 7 Paige, N. Y. C. Rep. 239, we find the following which we insist is conclusive

of the case at bar: "An executor or administrator, appointed in and acting under the authority of a foreign court of probate, by virtue of his office merely, cannot prosecute or defend an action in the courts of this state, *nor can he be substituted* in the place of the deceased in an action therein pending against him at the time of his death. The rule is otherwise, where the executor has brought assets of the estate into this state. *In re Webb,* 11 Hun, 126; *Lyman* v. *Parsons,* 28 Barb. 572; *Smith* v. *Webb,* 1 Barb. 230; *Metcalf* v. *Clark,* 41 Barb. 48; *Pugh* v. *Jones,* 6 Leigh, 299, 310.

KING, J.:

In May, 1888, suit was commenced in the district court of Alturas county, Idaho, by W. S. McCornick & Co. against J. S. Lewis, W. H. Nye, and others to recover the sum of $3,084, alleged to be due plaintiffs for money obtained by defendants, as copartners, from their bank. Personal service of summons was made on each defendant, and all answered separately, except Nye, against whom judgment by default was taken. J. S. Lewis denied the allegations of the complaint, and verified in person his answer. L. Price appeared as his attorney. Before the case was tried, Lewis died, and on the 6th day of June, 1890, his death was suggested and entered of record in the cause, and it was ordered that Hiram D. Lewis and John S. Lewis, executors of the estate of decedent, be substituted for the deceased. On the 9th of the same month said Hiram D. Lewis and John S. Lewis, executors of John S. Lewis, deceased, entered their appearance by Lyttleton Price, their attorney, and by consent the case was continued until the following term. A trial was duly and regularly had, and the issues found against all the defendants, except Turner, and judgment entered (for the amount claimed) against Hiram D. Lewis and John S.

Lewis, as executors of the estate of J. S. Lewis, deceased, and the other defendants. This judgment was assigned to plaintiff herein, and in February, 1891, it brought suit in the district court of this territory against Hiram D. Lewis and J. S. Lewis, as executors of J. S. Lewis, deceased, and the others, against whom judgment had been rendered in the Idaho court. ·The complaint alleged the partnership of the deceased and others in Idaho, their overdraft at the assignors' bank, the suit in Idaho, the death of the decedent, testate, and that said Hiram D. Lewis and John S. Lewis were his executors and personal representatives, and became and were his legatees, and as such appeared and acted in the further defense of said action, and were duly substituted for the deceased, and appeared at the trial; that the court was one of general jurisdiction, and that judgment, which is set out in *hæc verba*, was regularly entered; that the attorney who appeared for the defendants was entitled to practice in said court, and empowered and authorized to act for the parties; that the deceased died testate, being a resident of Ogden, Utah, at the time, and that said Hiram D. Lewis and John S. Lewis were the duly-qualified and acting executors of his will at the time they appeared in the Idaho court, and are still so acting; that a certified copy of said judgment was presented to them for allowance, but was rejected. Judgment is demanded against the defendants. There is no prayer for it to be paid out of the estate.

Hiram D. Lewis and John S. Lewis answered, denying the partnership or the overdraft, or any indebtedness, but admitted that suit was brought in Idaho, as alleged in the complaint, and that their testator was duly served and appeared in said cause, and that he died testate, and that they became and were and are his executors, personal representatives, and legatees. They allege that they were appointed executors by the probate court of Weber county,

Utah, and reside in said county. There was no denial of appearance in the action brought in Idaho, but it was denied that they appeared or acted as executors. On information it is denied that as executors they were substituted in the action, or that judgment was obtained against them as executors. It is admitted that the judgment pleaded was entered in a court of general jurisdiction, but alleged to have been entered without authority or jurisdiction over them as executors of the deceased, and they never were executors or personal representatives in Idaho. Upon the trial the plaintiff offered in evidence the judgment roll from the Idaho court, duly authenticated. It was received over defendant's objection. No evidence was offered by defendants, and a verdict was given for plaintiff. Subsequently a new trial was granted, defendants alleging in their motion that it was error to admit the judgment roll, for the reason that the judgment as to the defendants Hiram D. Lewis and John S. Lewis was null and void, and did not show that the decedent was indebted to plaintiff. From the order granting a new trial plaintiff appeals.

Respondents contend that this is an action against the estate, and an attempt to subject the assets of the estate to the payment of the amount claimed; that the domicile of the testator having been in Utah, and the probate court of Weber county having jurisdiction over his estate, and there being no ancillary administration in Idaho, therefore they had no authority whatever to appear in said cause or bind said estate. They call attention to the statutes of Utah which require that any person having a claim against a deceased person shall present it to the executor or administrator for allowance or rejection, failing to do which, no recovery can be had therein, and also to the statute of Idaho which contains the same provisions; and they insist that, no executor having been

appointed in Idaho, and the claim never having been presented there, the judgment was a nullity. Appellant's counsel admit that the judgment there obtained, and upon which this suit is founded, is not a valid claim against the estate, and can in no wise become a charge against it, and direct attention to the statute which requires a judgment against an estate to provide " that the executor or administrator pay in due course of administration, the amount ascertained to be due " (2 Comp. Laws, § 4134), and to the fact that the judgment sued upon does not contain this provision, and therefore they say it cannot be regarded as the foundation of a claim against the estate. Appellant's position is that, the defendants being the representatives of deceased, and his legatees, and having voluntarily gone into the courts of Idaho and entered their appearance, they became executors *de son tort,* and, while they were described as executors, still the judgment rendered was not *de bonis testatoris,* but *de bonis propriis,* and that this action is against them as executors *de son tort,* and not against the estate. We think the defendant's contention, that the judgment obtained in Idaho is invalid as against the estate, is correct. If this is an action to compel the estate to pay such judgment, then we have no hesitancy in saying that no error was committed in granting a new trial. The devolution of property left by deceased persons is governed by the law of the domicile, and the legal representatives derive their authority from the sovereignty appointing them. They cannot act extra-territorially, and bind the estate thereby. If property is left by a decedent in different states, the legal representatives must derive their authority from each of as many sovereignties as may have jurisdiction over the property so left, because the territorial element of the law, or rather of the sovereignty from which the law emanates, permits no other sovereignty to exercise authority over it,

and each, therefore, must itself create the legal ownership necessary in its devolution.    But defendants go further, and claim that no personal representative can sue or be sued in a foreign jurisdiction; and it is therefore argued that the defendants could not enter an appearance, and no judgment could be pronounced against them.

. In support of this proposition, section 513 of Story's Conflict of Laws is cited; also, *Vaughan* v. *Northup,* 15 Pet. 5.    Mr. Story wrote the opinion in this case, and stated substantially the view expressed in the section of his work just referred to, the language being:    "The question is broadly presented, whether an administrator appointed and deriving his authority from another state is liable to be sued here, in his official character, for assets lawfully received by him under and in virtue of his original letters of administration.    We are of opinion, both upon principle and authority, he is not.    Every grant of administration is strictly confined in its authority and operation to the limits of the territory of the government which grants it, and does not *de jure* extend to other countries;    *    *    *    and whatever operation is allowed to it beyond the original territory of the grant is a mere matter of comity, which every nation is at liberty to yield to or withhold. -    *    *    *    Hence, it has become an established doctrine that an administrator appointed in an estate cannot, in his official capacity, sue for any debts due his intestate in the courts of another state, and that he is not liable to be sued in that capacity in the courts of the latter by any creditor for any debts due them by his intestate."    The meaning of this decision is apparent when we look to the words "official capacity."    The personal representative cannot bind the estate by his extra-territorial acts.    Where he crosses the lines of the sovereignty in which he received his appointment he denudes himself of that authority as the legal representative of the

decedent to bind the estate. As conclusive evidence of the correct interpretation to be placed on this decision, it is only necessary to allude to section 514 of Judge Story's work just cited. It reads: "But although an executor or administrator appointed in one state is not in virtue of such appointment entitled to sue, nor is he liable to be sued, in his official capacity, in another state or country, yet there are many other questions which may require consideration, and in which a conflict of laws may arise in different countries. * * * Let us suppose that an executor or administrator should go into a foreign country, and, without there taking out new letters of administration, should collect property. * * * The question might arise whether he would not thereby, to the extent of the receipt and collection of such assets, be liable to be sued in the courts of that country by any creditor there. Upon general principles it would seem that he would be so liable. And, upon the principles of the common law, he would be liable as an executor *de son tort.* * * * For it would not lie in his mouth to deny that he had rightfully received such assets."

The question then arises, the nonliability of the estate being determined, was the judgment obtained in Idaho against the respondents a valid judgment against them as executors *de son tort?* The record is silent as to whether respondents' testator left assets in the state of Idaho or not. A fair presumption would be, not only from the pleadings in the case describing the deceased as a partner in certain mining and smelting works in Idaho, but also from the fact of the appearance of the executors after his death, that he had property interests there at the time of his demise. But we do not consider it indispensably necessary that the decedent should have left property in Idaho, in order to place upon his executors the vulnerable armor of executors *de son tort.* The wrongful inter-

meddling into the decedent's property, or the doing of any act characteristic of the office of executor, would constitute them executors in their own wrong. Respondents voluntarily appeared in the Idaho court, had themselves substituted as defendants, appeared at the trial, defended upon the answer made by the deceased, and claimed to be and were his executors. Under the statutes of Idaho, the death of Lewis did not abate the action, but the plaintiff could proceed against his estate. His personal representatives came in, and the suit was revised as to them. And a personal representative may be admitted to defend an action pending in a foreign jurisdiction against the deceased prior to his death. *Brown* v. *Brown*, 35 Minn. 191, 28 N. W. 238; *Institution* v. *Jones*, 35 N. J. Eq. 406. Such conduct made them executors *de son tort*. Woerner, Adm'n, §§ 164, 186–193, inclusive; 1 Williams, Ex'rs (Rand & Talcott, Ed.) pp. 298–322. If one sued as rightful executor answers and defends as such, he becomes thereby an executor *de son tort*. Lawes, Pl. 190, note; *Hill* v. *Henderson*, 13 Smedes & M. 688; *Norfolk* v. *Gantt*, 2 Har. & J. 435; 1 Williams, Ex'rs, 138; *Davis* v. *Connelly's Ex'rs*, 4 B. Mon. 136. Respondents need not have appeared in the Idaho court, or they could have pleaded *ne unques executor*, and the plaintiff would have failed in affixing liability to them. They could also have pleaded *plene administravit*, and if their testator had left an estate in Idaho, and it had been administered and expended, they could have prevailed. Woerner, Adm'n, § 194, 1 Williams, Ex'rs. pp. 312, 313. Appearing in a foreign jurisdiction as they did, and not pleading their want of capacity to appear and defend, they waived it. *James* v. *Morgan*, 36 Conn. 348; *Dearborn* v. *Mather*, 128 Mass. 194. The judgment in Idaho was against the defendant executors personally, in the sense that it was not against the estate, but as executors *de son tort*.

In the case of *Davis* v. *Connelly's Ex'rs, supra,* it appeared that Thomas Connelly was a resident of Kentucky, and lived and died there; that during his lifetime suit was brought against him in Ohio, process duly served, and he appeared and pleaded *non assumpsit.* Before a trial he died, and his executors, appointed in Kentucky, voluntarily appeared in said suit as executors, and the same was prosecuted against them on their testator's plea. Judgment was in favor of plaintiff, and upon this judgment he sued them in Kentucky. They replied, alleging that they were not executors in the state of Ohio, nor that their testator left any estate or assets there; that the proceedings in the record of the suit declared on were had in Ohio against them as executors under the laws and within the jurisdiction of Kentucky; that the judgment rendered was null and void, not being within the jurisdiction of the Ohio court, and there being no law of Ohio authorizing the suing or reviving a suit already brought, by consent or otherwise, against executors qualified and acting in another state. The court say: "Whatever may be said of the averment of the plea that the proceedings against the defendants in Ohio were had against them as executors under the laws and within the jurisdiction of Kentucky, the exact import of which it might be difficult to determine, the judgment is against the defendants as executors generally, and the replication states that they, professing to be executors of Connelly, and acting as such, entered a voluntary appearance in and to the suit, as his executors, etc., as appears by the record; which records show that they were proceeded against as executors of Connelly, without this designation, and that their voluntary appearance was the ground of the proceeding. Upon the facts stated in the replication, and also in the record, they are estopped to deny that they were executors in Ohio. They

have voluntarily assumed to be so, by act of record, and in that character sustained the defense of the suit to final judgment against them.    Upon the face of the pleadings and the record, they were the executors of Connelly· in Ohio, and if not lawful executors they made themselves executors *de son tort* by their acts; and, whether they could or could not have defeated an attempt at a compulsory revival of the suit against them by timely denial of the character ascribed to them, it is now too late to retract or deny what they voluntarily and solemnly, not only admitted, but assumed, to be their character,   ·*    *    * and whether they were so [executors] lawfully or unlawfully is immaterial to the question of jurisdiction. In either case they are equally estopped from denying the character in which they appeared and defended the suit, and the judgment is equally valid and conclusive against them."

There is no pretense in the case at bar that the district court of Alturas county did not have jurisdiction of the subject-matter of the controversy and the defendants, including the deceased; and it is not contended that the estate could not have been bound if the executors had been properly before the court after ancillary administration, and after presentation and rejection of the claim. Nor is it denied that the respondents were actually before the court in person and by attorney, and were proceeded against as executors.    Upon this point the court in the case just quoted· from say:    "But having been recognized as executors of Connelly in the tribunals of Ohio, and by the proceeding against them, and having admitted their character by not denying it, there was not only no necessity for proof in order to authorize the judgment against them, but the record and judgment are conclusive evidence against them for all the purposes and effects of that judg-

ment, and the character which they therein assumed actually belonged to them." *Davis* v. *Connelly's Ex'rs, supra.* We are of opinion that the conduct of respondents in appearing in a foreign jurisdiction, and in failing to plead their want of capacity or interpose any other plea by way of abatement or otherwise, or to object to proceedings against them as executors, and in adopting the answer of their testator, and contesting the issues presented in the cause, estops them, when sued in this territory as executors *de son tort,* from denying that they were executors there, or pleading the invalidity of the judgment. *Davis* v. *Connelly's Ex'rs, supra; Gleason* v. *Dodd,* 4 Metc. (Mass.) 333; *Moss* v. *Rowland,* 3 Bush. 505; Bigelow, Estop. 779, and note 299; 1 Woerner, Adm'n, § 164. Where a man has so acted as to become in law an executor *de son tort,* he thereby renders himself liable, not only to an action by the rightful executor, but also to be sued by a creditor of the deceased, or by a legatee; for an executor *de son tort* has all the liabilities, though none of the privileges, that belong to the character of executor. 1 Williams, Ex'rs, p. 310. And it would seem, under the facts in this case, that every principle of justice must prompt to this conclusion, and that a decent regard for the sovereignty of a sister state and its laws and courts, not speaking of that comity which ought to characterize the treatment by courts of the proceedings of judicial tribunals in other jurisdictions, would suggest this view. It is not to be overlooked that the respondents were the legatees of the deceased. They were in one sense the real parties in interest to this suit. If it could be established that the testator was not a partner as alleged, or did not obtain money from the bank, and was not indebted as claimed, their distributive portion of the estate would be increased *pro tanto.* They had their day in court, and were defeated, returned to their domicile and the home of

the deceased, and now in effect say: "We were only
experimenting with the Idaho courts. We had no authority
to appear there, but we did, and conducted a moot case."
Such trifling with the courts is not to be viewed with
favor. And even if they are not to be regarded as executors
*de son tort*, we think they are estopped from denying the
character ascribed to them, and by them voluntarily assumed.
We think, under the peculiar facts of this case, that the
judgment obtained in the district court of Idaho was valid
against the respondents as executors *de son tort*, and was
not a judgment against the estate.

That brings us to the questions: Is the case at bar
brought against the proper persons? Does the complaint
contain the necessary allegations to entitle plaintiff to
recover? Was the proof offered on the trial sufficient to
warrant a verdict? And first it is to be remembered that
the only objection made to the complaint was that it
failed to state a cause of action against the respondents,
either as executors or individually. It is announced by
Mr. Woerner (section 193 of his work) that, in an action
against an executor *de son tort*, he is to be sued
as executor generally, although a different rule of
liability applies. "In an action by a creditor, he shall be
named executor generally, for the most obvious conclusion
which strangers can form from his conduct is that he has
a will of the deceased wherein he is appointed executor,
but he has not yet proved it." 1 Williams, Ex'rs, 310–311.
In the case of *Davis* v. *Connelly's Ex'rs*, from which we
quoted at length, the judgment was obtained in Ohio in
the same manner as plaintiff's assignor obtained judgment
in Idaho, and upon such judgment suit was brought in
Kentucky against the executors as such. They denied
being executors in Ohio, claiming to have derived their
powers from the courts of Kentucky. The replication was
that they had assumed to act as executors in Ohio, and it

was held the court erred in sustaining the demurrer to the replication. The case of *Brown* v. *Leavitt,* 26 N. H. 493, was against the defendant, as executor of Morris Leavitt, to recover upon two promissory notes. Defendant pleaded in bar that he never was the executor of the last will of deceased, "and never administered, as such executor, any goods or estate which were of said Morris." Plaintiff replied that he had intermeddled with the personal estate of said Morris, to the value of the damages sustained by the plaintiff, and therefore as such executor ought to be charged therewith. The plea was held good. The authorities seem to be unanimous in holding that the complaint must charge the defendant, when sued as executor *de son tort,* as executor generally, the same as though he was in all respects a proper and legal executor. *Sawyer* v. *Thayer,* 70 Me. 340; *White* v. *Mann,* 26 Me. 361; *Shaw* v. *Hallihan,* 46 Vt. 389; *Lee* v. *Chase,* 58 Me. 432; 7 Am. & Eng. Enc. Law, 187.

If the Code system of pleading permitted a replication to defendants' answer, it is quite apparent the plaintiff's plea to the answer would have been substantially the same as that interposed in the case of *Davis* v. *Connelly's Ex'rs, supra.* The plaintiff could have replied: "You appeared in Idaho. Your answer admits, in effect, that there were assets belonging to the estate in Idaho. You have not pleaded a failure of assets, and therefore have admitted receiving sufficient to meet this claim, and are therefore liable." The words "as executors" in the pleadings are something more than *descriptio personæ.* While the element of personal liability attaches to them, it is by reason of their representative capacity, and the voluntary assumption of a character which could not have been given them. So that, as to the plaintiff and its assignors, they are in one sense executors. But, under the pleadings, the plaintiff was entitled to meet the plea of *ne unques executor* by

proof of their having acted as such in the state of Idaho. And upon this point the authenticated record of the proceedings and judgment in that state was, in the absence of other proof to the contrary, sufficient to justify an instruction for the jury to find for the plaintiff. If the plea of *plene administravit* had been made, and evidence offered to support it, the case would have resulted differently. This plea can be interposed simultaneously with the plea *ne unques executor* by an executor *de son tort* as well as one *de jure.* 1 Williams, Ex'rs, 312; 1 Woerner, Adm'n, § 194. An executor *de son tort* is not liable beyond the property of the deceased coming to his hands. But, in order to excuse himself from liability if he fails on his plea of *ne unques executor*, he must deny receiving assets, or plead and prove that he has fully administered and paid out all that he has lawfully received. 1 Williams, Ex'rs, 312, 313.

The answer of defendants was, in effect, that if the issue was found against them—that is, that they were not executors in Idaho—then they had received assets to pay plaintiff's debts. The answer was met by plaintiff showing a legal and valid estoppel against them. If they had pleaded a full administration of the estate in Idaho, and that nothing remained in their hand, then plaintiff could only have succeeded by proving a valid claim against the estate in this territory. It is true that the complaint alleges a presentation of the claim, and rejection, in the same manner as if suit were brought to compel payment by the estate. But it is evident that the purpose of the suit was to charge the respondents as executors *de son tort*, because it is well settled that, on a joint demand against an executor of a deceased obligor and surviving obligors, a joint judgment cannot be rendered, for the reason that, as to the former, the judgment will be payable *de bonis testatoris*, while, as to the latter, *de bonis propriis*. And

unnecessary allegations in the pleadings may be regarded
as surplusage.   The plaintiff stated all the facts connected
with the case, and if the court can ascertain the purpose
of the pleader, and a cause of action is stated, it is the
duty of the court to sustain it, and not sacrifice substance
to shadow and form.   The respondents, legatees and real
parties in interest as they are, ought to be estopped from
denying the validity of the judgment sued upon, especially
in view of the fact that their answer in the case at bar
was such as would lead plaintiff to a reliance upon the
issues therein tendered, and to an omission to present the
original claim as a liability against the estate.   It would
be great injustice, now that the statute of limitations has
run against the plaintiff, to hold that the respondents are
not liable in this action (their conduct induced this form
of action).   To allow them now to escape from paying a
claim which a competent court pronounced just and valid,
and as legatees carry off the estate of the decedent, would
be repugnant to justice and fair dealing.

We think the court erred in granting a new trial.   At
most, the judgment ought to be corrected so as to indi-
cate more clearly that it is against the respondents as
executors *de son tort*.   It is therefore ordered that the case
be remanded, with directions that the judgment be so
amended as to indicate that it is against the respondents
as executors *de son tort*, and to be collected out of their
property.

MERRITT, C. J., and BARTCH, J., concur.